Morin I. Jacob, Bar No. 204598
mjacob@lcwlegal.com
Lisa S. Charbonneau, Bar No. 245906
lcharbonneau@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105
Telephone:   415.512.3000
Facsimile:    415.856.0306

Attorneys for Defendants
COUNTY OF STANISLAUS and
BIRGIT FLADAGER

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

DOUGLAS MANER,

        Plaintiff,

    v.

COUNTY OF STANISLAUS, BIRGIT
FLADAGER, and DOES 1 through
20, inclusive,

        Defendants.

Case No.: 1:14-CV-01014-MCE-MJS

**DEFENDANT BIRGIT FLADAGER'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE**

*[Filed concurrently with Notice of Motion,
Statement of Undisputed Facts, Joint
Statement of Undisputed Facts, Appendix of
Evidentiary Support, Request for Judicial
Notice, Proposed Order, Proposed Judgment]*

Date:      April 21, 2016
Time:      2:00 PM
Courtroom:7, 14th Floor
Judge:     Morrison C. England, Jr.

Trial Date: October 24, 2016

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ I

II. FACTUAL BACKGROUND ............................................................................... 2

    A. MANER'S MISCONDUCT AN ISSUE AT THE OUTSET ...................... 2

    B. MANER CONTINUES TO ALIENATE CLERICAL STAFF ...................... 3

    C. BIRGIT FLADAGER IS ELECTED DISTRICT ATTORNEY IN 2006 ................................................................................................ 3

    D. ORGANIZATION OF THE ODA ........................................................... 3

    E. MANER'S MISCONDUCT CONTINUES AFTER 2006 ELECTION .......................................................................................... 4

    F. MANER'S SUPERVISOR PROPOSES SUSPENSION; DA FLADAGER AGREES TO REDUCE TO A LETTER OF REPRIMAND ......................................................................................... 5

    G. MANER AGAIN ANGERS PARTNER LAW ENFORCEMENT OFFICERS ............................................................................................ 6

    H. A MURDER VICTIM'S NEXT OF KIN AND ADVOCATE ASKTHAT MANER BE REMOVED FROM CASE ................................... 7

    I. THE PRESIDING JUDGE OF THE COUNTY JUVENILE COURT IDENTIFIES MANER AS A "BULLY" AND REQUESTS THE ODA TAKE APPROPRIATE ACTION .......................... 8

    J. MANER IS PLACED ON PAID ADMINISTRATIVE LEAVE ................... 9

    K. MANER IS SUSPENDED .................................................................... 10

    L. MANER QUITS HIS JOB .................................................................... 10

III. ARGUMENT ................................................................................................... 11

    A. LEGAL STANDARD .......................................................................... 11

    B. FLADAGER IS ENTITLED TO SUMMARY JUDGMENT ON MANER'S FIRST AMENDMENT CLAIMS ............................................. 11

    C. MANER DID NOT ENGAGE IN PROTECTED 1ST AM. ACTIVITY ........................................................................................... 11

        1. No Protected Speech ............................................................... 11

            a. Maner's 2006 Letter to the Editor was Not Protected Speech ................................................... 12

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

b.    2006 Meeting with Fladager was Not Protected Speech ........................................................ 12

c.    Maner's June 2013 *Skelly* Conference ............................. 13

2.    No Protected Expressive Activity ........................................... 13

D.    THE CONDUCT MANER COMPLAINS OF IS NOT ADVERSE OR IS TIME-BARRED .............................................. 14

1.    Maner Was Not Constructively Discharged .......................... 14

2.    Maner's 2013 Suspension Was Not Final and Thus Not an Adverse Employment Action ..................................... 16

3.    Maner's other Alleged Adverse Employment Actions are Time-Barred and/or are Not Adverse ............................. 17

4.    No Showing Fladager was Involved in Adverse Actions .............. 18

E.    MANER CAN'T SHOW PROTECTED ACTIVITY WAS A SUBSTANTIAL OR MOTIVATING FACTOR FOR ANY ADVERSE ACTION ...................................................................... 19

1.    Knowledge of the Protected Activity is Required ................... 20

2.    Knowledge of the Protected Activity Alone is Not Sufficient; Maner Has No Direct Evidence of Discriminatory Motive ........................................................ 20

3.    Maner Cannot Show Discriminatory Motive Through Circumstantial Evidence .......................................................... 21

F.    DA FLADAGER HAD LEGITIMATE, NON-RETALIATORY REASONS FOR HER ACTIONS AND WOULD HAVE REACHED THE SAME DECISIONS ABSENT PROTECTED ACTIVITY ................................................................................. 22

G.    MANER CANNOT ESTABLISH A DUE PROCESS VIOLATION ................................................................................. 23

1.    Due Process Was Provided for the 2007 Proposed Suspension that was Reduced to a Letter of Reprimand ....................................................................... 24

2.    Due Process Was Provided for the 2013 Proposed Discharge that was Reduced to a Suspension ..................... 24

3.    Maner's Reassignments and Letters of Reprimand Did not Trigger Due Process Rights. ........................................ 26

H.    FLADAGER HAS QUALIFIED IMMUNITY FROM §1983 LIABILITY ................................................................................. 26

I.    LABOR CODE §§1101-1102 DO NOT APPLY TO FLADAGER OR ARE PRE-EMPTED ............................................. 27

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

J.   EVEN IF LABOR CODE §§1101-1102 APPLY, THERE IS NO VIOLATION ................................................................... 28

K.   TORT CLAIMS ACT PROVIDES STATUTORY IMMUNITY ................... 28

L.   MANER IS NOT ENTITLED TO PUNITIVE DAMAGES .......................... 28

M.   MANER'S CLAIMS ARE BARRED BECAUSE HE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AND FAILED TO EXHAUST HIS COLLECTIVE BARGAINING GRIEVANCE PROCEDURE ................................................................. 29

N.   IF NECESSARY, PARTIAL SUMMARY JUDGMENT IS PROPER ............................................................................................. 30

IV.   CONCLUSION ...................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Action Apart. v. Santa Monica*
509 F. 3d 1020 (9th Cir. 2007)..................................................................................... 17

*Anselmo v. Mulli*
No. 2:12-01422-WBS-EFB, 2013 WL 5817560 (E.D. Cal. 2013).............................. 21

*Barren v. Harrington*
152 F.3d 1193 (9th Cir. 1998)..................................................................................... 19

*Blaisdell v. Frappiea*
729 F. 3d 1237 (9th Cir. 2013)..................................................................................... 13

*Brewster v. Board of Education of the Lynwood Unified School Dist.*
149 F.3d 971 (9th Cir. 1998)....................................................................................... 28

*Brooks v. City of San Mateo*
229 F.3d 917 (9th Cir. 2000).................................................................................. 17, 18

*Buscemi v. McDonnell Douglas Corp.*
736 F.2d 1348 (9th Cir. 1984)..................................................................................... 31

*Campos v. City of Irwindale*
593 Fed. Appx. 703 (9th Cir. 2015).......................................................................17, 18

*Carpinteria v. Santa Barbara*
344 F.3d 822 (9th Cir. 2003)....................................................................................... 18

*Celotex v. Catrett*
477 U.S. 317 (1986).................................................................................................... 11

*Clark v. Breeden*
532 U.S. 268 (2001) .................................................................................................... 23

*Clements v. Airport Authority*
69 F. 3d 321 (9th Cir. 1995).................................................................................... 4, 27

*Cleveland Bd. of Educ. v. Loudermill*
470 U.S. 532 (1985) .................................................................................................... 25

*Coszalter v. City of Salem*
320 F. 3d 968 (9th Cir. 2003)...................................................................................... 21

*Dang v. Cross*
422 F. 3d 800 (9th Cir. 2005)...................................................................................... 31

*Desrochers v. San Bernardino*
572 F.3d 703 (9th Cir. 2009)................................................................................. 12, 13

*Eng v. Cooley*
552 F. 3d 1062 (9th Cir. 2009)............................................................................*passim*

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

*Garcetti v. Ceballos*
    547 U.S. 410 (2006) ............................................................................ 12

*Gilbrook v. City of Westminister*
    177 F.3d 839 (9th Cir. 1999) ............................................................... 13

*Gile v. United Airlines, Inc.*
    213 F.3d 365 (7th Cir. 2000) ............................................................... 31

*Hellman v. Weisberg*
    360 Fed. Appx. 776 (9th Cir. 2009) ...................................................... 18

*Huskey v. City of San Jose*
    204 F. 3d 893 (9th Cir. 2000) .............................................................. 16

*Hutchinson v. Bear Valley Cmty.*
    No. 1:15-CV-01047-JLT, 2015 WL 9304899 (Thurston, J.)
    (E.D. Cal. Dec. 22, 2015) .................................................................... 25

*Jett v. Dallas Indep. Sch. Dist.*
    798 F. 2d 748 (5th Cir. 1986) .............................................................. 15

*Jones v. Williams*
    297 F.3d 930 (9th Cir. 2002) ......................................................... 19, 31

*Karcher v. Emerson Elec. Co.*
    94 F.3d 502 (8th Cir 1996) .................................................................. 31

*King v. AC & R Advertising*
    65 F. 3d 764 (9th Cir. 1995) .......................................................... 14, 15

*Lindsey v. Shalmy,*
    29 F. 3d 1382 (9th Cir. 1994) .............................................................. 28

*London-Marable v. Boeing Co.*
    357 Fed. Appx. 61 (9th Cir. 2009) ........................................................ 15

*Maestas v. Segura*
    416 F.3d 1182 (10th Cir. 2005); .......................................................... 21

*Malley v. Briggs*
    475 U.S. 335 (1986) ........................................................................... 28

*Merino v. El Dorado Hills County Water Dist.*
    2011 WL 5118604 (E.D. Cal. 2011) ...................................................... 4

*Metzger v. Martinez*
    48 Fed. Appx. 660 (9th Cir. 2002) ....................................................... 15

*Mt. Healthy City School Dist. Bd. of Ed. v. Doyl*
    429 U.S. 274 (1977) ........................................................................... 24

*National v. Morgan*
    536 U.S. 101 (2000) ........................................................................... 18

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

*O'Haire v. Napa State Hosp.*
   No. C 09-2508 RMW PR, 2012 WL 762076 (N.D. Cal. 2012.) .......................... 18, 19

*Poland v. Chertoff*
   494 F. 3d 1174 (9th Cir. 2007)...................................................................... 15, 16

*Portman v. County of Santa Clara*
   995 F.2d 898 (9th Cir. 1993)............................................................................... 25

*Republic Steel Corp. v. Maddox*
   379 U.S. 650 (1965) .......................................................................................... 33

*Schnidrig v. Columbia Mach*
   80 F. 3d 1406 (9th Cir. 1996)............................................................................. 16

*Siegert v. Gilley*
   500 U.S. 226 (1991) .......................................................................................... 28

*Smith v. Wade,*
   461 U.S. 30 (1983) ............................................................................................ 31

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011)............................................................................ 18

*Steiner v. Showboat Operating Co.*
   25 F. 3d 1459 (9th Cir. 1994)............................................................................. 16

*Strahan v. Kirkland*
   287 F. 3d 821 (9th Cir. 2002)............................................................................. 21

*Trevino v. Lassen Mun. Utility Dist.,*
   2009 WL 385792 (Karlton, L.) (E.D. Cal. 2009) ................................................ 26

*Ulrich v. City and County of San Francisco*
   308 F. 3d 968 (9th Cir. 2002).............................................................................. 11

*Vance v. Peters*
   97 F.3d 987 (9th Cir. 1996)................................................................................ 19

*Vierria v. California Highway Patrol*
   2011 WL 2971170 (E.D. Cal. 2011)................................................................... 30

*Villiarimo v. Aloha*
   281 F.3d 1054 (9th Cir. 2002)............................................................................ 23

*Weisbuch v. County of Los Angeles*
   119 F. 3d 778 (9th Cir. 1997)............................................................................. 27

*Williams v. Borough of West Chester Pa.*
   891 F.2d 458 (3rd Cir. 1989).......................................................................... 19, 21

*Zimmerman v. City of San Francisco*
   2000 WL 1071830 (N.D. Cal. 2000)............................................................... 26, 27

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

## State Cases

Caldwell v. Montoya
    10 Cal. 4th 972 (1995.) ................................................................. 27

California Correctional Peace Officers' Ass'n v. State of California
    188 Cal. App. 4th 646 (2010) ........................................................ 29

Civil Service Ass'n City and County of San Francisco
    22 Cal. 3d 552 (1978) ................................................................... 26

Flippin v. Los Angeles City Bd. of Civil Service Com'rs
    148 Cal. App. 4th 272 (2007) ......................................................... 4

Johnson v. Arvin-Edison Water Storage Dist.
    174 Cal. App. 4th 729 (2009) ........................................................ 29

Park 'N Fly v. City of South San Francisco,
    188 Cal. App. 3d 1201 (1987) ....................................................... 32

Shoemaker v. County of Los Angeles
    37 Cal. App. 4th 618 (1995) .......................................................... 27

Civil Service Ass'n City and County of San Francisco
    22 Cal. 3d 552 (1978) ................................................................... 26

Skelly v. State Personnel Board
    15 Cal. 3d 194 (1979) ..................................................................... 4

## Federal Statutes

42 U.S.C. §1983 ..................................................................... *passim*

## State Statutes

California Constitution Article. I, §28. ................................................ 7

Government Code section 820.2 .................................................... 27

Government Code section 821.6 .................................................... 27

Government Code section 3201 ..................................................... 27

Government Code section 3203 ..................................................... 27

Labor Code section 1102 ........................................................ 2, 27

Labor Code section 1101 ........................................................ 2, 27

## Rules

Federal Rules of Civil Procedure 56(c) ............................................ 11

Federal Rules of Civil Procedure 56(a) ............................................ 29

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

6768949.2  ST236-025

TABLE OF AUTHORITIES

# I.   <u>INTRODUCTION</u>

Plaintiff Maner ("Maner") worked as a Deputy District Attorney ("DDA") for the County of Stanislaus ("County") for over twenty years. Despite Maner's career successes, he also received an unprecedented number of increasingly-serious complaints about his conduct dating back to his first year at the County. Defendant Birgit Fladager ("DA Fladager") was not personally involved in any of the alleged adverse actions that form the basis of Maner's claims. As such, Maner cannot show DA Fladager was motivated by his protected activity for any adverse actions he complains of. Even if Maner shows DA Fladager had sufficient personal involvement, the same decisions would have been made even if Maner had never engaged in any protected activity. Plus, summary judgment must be granted in DA Fladager's favor as a matter of law because she is statutorily immune from liability.

Maner's performance issues began early in his career with the County, and by 2005, he had been investigated, counseled, and reprimanded by numerous supervisors for misconduct. Nine of his ten annual performance evaluations note his problems working with others. In 2006, the County elected a new DA, Birgit Fladager. This did not change Maner's professionalism or conduct. Indeed, Maner continued alienating, insulting, and offending his co-workers, judges, law enforcement officials, and members of the public in numerous separate incidents. In response, his supervisors continued to counsel, reprimand, and discipline him for his repeated instances of similar, increasingly worse, misconduct. In 2013, after over twenty years of his supervisors' attempts to address his problems with less severe forms of discipline, the County's Assistant DA, Carol Shipley, proposed Maner's termination due to recent, egregious instances of misconduct, including significant complaints from a presiding judge and a murder victim's next of kin.

As a public employee, Maner was afforded pre-disciplinary due process rights prior to being noticed of any intent to suspend or discharge him. This process resulted in reducing a proposed discharge to a suspension. Instead of returning to work, however, Maner submitted a letter of resignation on October 7, 2013, in which he also claimed he

1 was a victim of retaliation due to first amendment activity in 2006 when he supported the
2 other candidate in the 2006 DA election. 2013 – 7 years later – was the first time Maner
3 had raised this concern with the County. Maner was not forced to quit; he resigned
4 because he could not face his own actions as a poorly-behaving DDA. He opened a
5 private criminal defense law firm the day after he resigned. Moreover, his claims fail
6 because no protected activity was a substantial or motivating factor in any action taken
7 toward him; the County would have taken the same actions toward Maner regardless of
8 his alleged protected activity. Maner's claims also fail because the actions alleged by
9 Maner are not adverse, time-barred, and/or not final, actionable events.

Lastly, Labor Code sections 1101 and 1102 are not applicable to DA Fladager
10 and cannot form the basis of any liability, and Maner cannot show any of DA Fladager's
11 alleged conduct warrants punitive damages. Summary judgment must be granted.

## II. FACTUAL BACKGROUND

Maner began working at the County in 1991 as a Deputy District Attorney
14 ("DDA"). He was a classified employee with a property interest in his employment, and
15 could only be terminated for good cause. Maner worked in more than 10 assignments,
16 and as a DDA V, was one of the most experienced. On October 7, 2013, he voluntarily
17 resigned his position, and opened up a criminal defense firm the next day. (Joint
18 Statement of Undisputed Facts ("JUF") 1-2, 19; Defendants' Statement of Undisputed
19 Facts ("SUF") 111.)

### A. MANER'S MISCONDUCT AN ISSUE AT THE OUTSET

Although Maner demonstrated strong lawyering skills during his career at the
22 ODA, his performance was consistently plagued by complaints, administrative
23 investigations, and disciplinary actions. In total, all but three of Maner's annual
24 performance evaluations at the ODA note weakness in the area of inter-personal
25 relations, citing numerous unrelated complaints spanning his entire career – from judges,
26 co-workers, law enforcement, court clerks, and defense counsel. In January 2001,
27 Maner was the subject of a harassment investigation after a clerk complained that Maner
28 referred to her as a "fucking bitch" and an "idiot." He was contemporaneously counseled
by his supervisor for the misconduct. In July 2003, Maner was counseled on improving

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

his communication skills after he was overheard being arrogant and condescending toward a member of the clerical staff. In January 2004, Maner was the subject of another internal administrative investigation after a paralegal complained that Maner's loud, angry, and demeaning demeanor toward her reduced her to tears. Maner was issued a Letter of Reprimand in April 2004 for his misconduct toward the paralegal. (SUF 5-23.)

## B.    MANER CONTINUES TO ALIENATE CLERICAL STAFF

In June 2005, Maner called an ODA clerical employee "incompetent" in open court. In September 2005, a legal clerk and a paralegal each independently complained that Maner was rude. Also in September, a Chief DDA complained that Maner deliberately withheld information from him. (Appendix, Ex. I, ¶12.) Due to these complaints, in September 2005, Acting District Attorney ("ADA") Carol Shipley requested that the ODA Human Resources ("HR") Manager, Kathy Matt, conduct an administrative investigation into Maner's recent conduct.[1] During the investigation, another paralegal complained that she was offended by Maner's loud use of the "f" word in the office. This too was included in the investigation. Based on Ms. Matt's findings, and in consultation with ADA Shipley, in December 2005, Maner's then-supervisor, Chief DDA Steve Casey, issued Maner written counseling due to the misconduct and directed him to take remedial training courses in communicating with others. (SUF 24-26.)

## C.    BIRGIT FLADAGER IS ELECTED DISTRICT ATTORNEY IN 2006

In June 2006, the County elected a new District Attorney, Birgit Fladager. DA Fladager assumed office in July 2006; she had worked at the ODA since 1990. (Appendix, Ex. G, ¶20.) During the campaign, Maner supported Fladager's opponent, Judge Michael Cummins. On May 23, 2006, the Modesto Bee published a Letter to the Editor authored by Maner titled, "Cummins Seeks Discussion." The letter addressed issues related to district attorney's offices and murder convictions, but did not mention DA Fladager, the election, or an endorsement of any candidate. (JUF 4-6.)

## D.    ORGANIZATION OF THE ODA

At the ODA, disciplinary and personnel decisions pertaining to DDAs are the

---

[1] The ODA had a dedicated HR professional within the ODA, the ODA HR Manager, who performed most HR functions for the ODA. During Maner's time at the ODA, the ODA HR Manager was supervised by ADA Shipley. (Appendix, Ex. H, ¶4.)

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

responsibility of the Assistant District Attorney ("ADA") and the Chief DDAs, who supervise each DDA. The ADA supervises the day-to-day operations of the ODA and compliance with the ODA's personnel policies. It is the responsibility of each Chief DDA to address any personnel issue involving one of their supervisees. If a Chief DDA believes further investigation into a complaint is warranted, he/she will consult with the ADA to initiate an investigation. Depending on the nature and/or severity of the personnel issue, the ADA may take over handling the misconduct. Whereas the Chief DDAs and ADA are responsible for issuing or proposing discipline, the DA is rarely involved unless and until an employee is provided with a *Skelly* conference.[2] At that time, the DA, in her capacity as a *Skelly* officer, will uphold or reduce the proposed discipline. (SUF 125.)

### E.   MANER'S MISCONDUCT CONTINUES AFTER 2006 ELECTION

Despite the counseling he received in 2005, Maner's discourtesy and misconduct toward others continued in 2006. In February 2006, two physician witnesses complained about Maner's conduct toward them. In May 2006, Maner was verbally counseled about being rude to, and overworking, clerical staff. In August 2006, he was inappropriate and rude toward Presiding Judge Silveira in open court. In October 2006, Chief DDA John Goold complained that Maner rudely entered a restroom and used a urinal only a few feet away from a female who was in the restroom painting the interior to Maner's supervisor, Chief DDA Gerard Begen, and the new ODA HR Manager, Ramon Bawanan. In January 2007, two clerical employees complained that Maner abruptly shut the door to a copy room while they were having a conversation on either side of the

---

[2] The term "*Skelly*" comes from a 1975 decision of the California Supreme Court, *Skelly v. State Personnel Board*, which that held a permanent public employee's property right to their continued employment cannot be taken away without minimum "due process" protections. (*Merino v. El Dorado Hills County Water Dist.*, 2011 WL 5118604, *5 (E.D. Cal. 2011), citing *Skelly v. State Personnel Board*, 15 Cal. 3d 194 (1979).) One of those protections is the right to respond, either orally or in writing, to the authority proposing discipline prior to implementation. (*Skelly, supra,* 15 Cal. 3d at 215.) If the employee decides to respond orally, such a meeting is referred to as a "*Skelly*" conference or meeting. The *Skelly* conference is not an evidentiary hearing. (*Clements v. Airport Authority,* 69 F. 3d 321, 331-32 (9th Cir. 1995).) Indeed, referring to a *Skelly* conference as a hearing is a misnomer. A *Skelly* conference is simply the employee's opportunity to tell his or her side of the story and offer any mitigating factors. The same individual who proposed or even investigated the discipline may serve as the "*Skelly* hearing" officer. (*Flippin v. Los Angeles City Bd. of Civil Service Com'rs,* 148 Cal. App. 4th 272, 282-83 (2007).)

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

1  door. Later that month, Maner refused orders to evacuate during a fire drill and advised

2  a clerk to similarly ignore the drill. Also in January 2007, Maner read another attorney's

3  confidential and privileged case notes to an outside third party. Due to these continued

4  instances of misconduct, ADA Shipley directed ODA HR Manager Bawanan to launch an

5  administrative investigation into Maner's misconduct dating back to October 2006

6  bathroom incident. (SUF 27-33.)

7       During Mr. Bawanan's investigation, the ODA received a complaint about

8  disparaging remarks Maner made in February 2007 to and about detectives from the

9  multi-agency Gang Intelligence Taskforce ("GIT") that worked closely with the ODA on

10 gang-related criminal prosecutions. Specifically, while assigned to prosecute gang

11 crimes, Maner wrote an email to members of the GIT that was critical of their efforts and

12 blamed them for something for which Maner was ultimately responsible. Due to the

13 nature of prosecutorial work, the ODA always seeks to have a good working relationship

14 with its partner law enforcement agencies and officers; Maner's email negatively affected

15 that relationship and could have hindered the ODA's efforts to prosecute gang-related

16 criminal activity. This complaint was included in Mr. Bawanan's investigation. (SUF 33.)

### F.  MANER'S SUPERVISOR PROPOSES SUSPENSION; DA FLADAGER AGREES TO REDUCE TO A LETTER OF REPRIMAND

18       After the 2007 investigation, Chief DDA Begen determined that Maner's

19 misconduct, taken together with his performance and disciplinary history, warranted a

20 five day suspension. On July 26, 2007, Chief DDA Begen caused to be issued to Maner

21 a Notice of Intended Suspension, which gave him the opportunity to respond to the

22 recommended discipline prior to its imposition at a *Skelly* conference. The *Skelly*

23 conference was held on August 28, 2007. Because she was not involved in the

24 disciplinary process, DA Fladager was the *Skelly* officer. Both Maner and his union

25 representative, Pat Thistle, attended and spoke at the *Skelly* conference. (SUF 37-39,

26 42.)

27       After the *Skelly* conference, DA Fladager and Mr. Thistle exchanged

28 communications about the possibility of Maner attending counseling and entering into a

    proposed "Last Chance Agreement," under which the five-day suspension would be set

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

aside if Maner agreed to follow all applicable job policies and procedures, attend

counseling and issue an apology to select staff members and the gang unit officer he

had offended. Ultimately, Maner refused to agree to the terms of DA Fladager's

proposed "Last Chance Agreement." Thus, in her capacity as a *Skelly* officer, DA

Fladager upheld Chief DDA Begen's proposed five-day suspension without pay. Maner

served his suspension between September 8, 2008, and September 12, 2008. (SUF 43-

45.)

As set forth in the August 2008 Order of Suspension, Maner had the opportunity

to appeal his suspension to the County's final decision-making authority with regard to

personnel matters, the County Hearing Board. Maner so appealed. As set forth in

Maner's negotiated labor agreement, Maner also had the right to request his appeal be

heard by an arbitrator, who would take over the responsibilities and authority of the

Hearing Board. Maner requested arbitration. Between September 2008 and March 2009,

DA Fladager, Mr. Thistle, and the County Counsel's Office exchanged communications

regarding Maner's appeal of his five-day suspension. In March 2009, County Counsel's

Office entered into a settlement agreement with Maner to set aside the five-day

suspension in exchange for Maner attending counseling on interacting with coworkers

and receiving a Letter of Reprimand. DA Fladager agreed, issued a Letter of Reprimand

on March 2, 2009, and restored Maner's five days of pay. (JUF 7-9; SUF 48, 49.)

## G. MANER AGAIN ANGERS PARTNER LAW ENFORCEMENT OFFICERS

In March 2011, a Modesto police officer who had appeared as a witness in one of

Maner's cases complained that Maner berated him and other officers at the courthouse.

The next month, a detective from the Ceres Police Department independently

complained about Maner's disrespectful treatment and disparaging comments toward

her, including commenting that her work was "crap." Maner's poor conduct toward

officers was harming the ODA's relationship with its partner law enforcement agencies.

Thus, ADA Shipley directed the ODA HR Manager Mr. Bawanan, to open an

investigation into the officers' complaints. After reviewing the results of Mr. Bawanan's

investigation, and considering Maner's previous discipline for similar misconduct, Chief

DDA Begen issued Maner a Letter of Reprimand for the misconduct toward the Modesto

office on October 11, 2011. The Letter directed Maner to apologize to the officer and to attend behavioral counseling. Maner had already apologized to the Ceres detective. (SUF 55-57, 59-61.)

Unfortunately, the first draft of Maner's apology letter was not an apology and was otherwise wholly inadequate; if sent, the letter would have further damaged the ODA's relationship with law enforcement. Thus Chief DDA Begen had to counsel Maner on basic apology skills. Around this time, Chief DDA Begen began to question Maner's judgment and felt Maner was excessively difficult to supervise. Soon after this incident, Chief DDA Begen requested that he no longer be required to supervise Maner. Effective January 2012, Maner's new supervisor was Chief DDA Dave Harris. (SUF 63.)

## H. A MURDER VICTIM'S NEXT OF KIN AND ADVOCATE ASK THAT MANER BE REMOVED FROM CASE

In 2012, Maner was the attorney on the "Solario" murder case, which involved the murder of Bobby Ybarra. The victim's next of kin was named Mary Ann Ybarra. Ms. Ybarra and her County-appointed Victim Advocate, Mr. Loya, frequently attended hearings on her brother's case. By early 2012, Ms. Ybarra was unhappy with Maner's work on the case; she felt ignored, excluded, and that Maner was not adequately keeping her or Mr. Loya informed of case developments. In February 2012, Ms. Ybarra and Mr. Loya complained to DA Fladager and Maner's supervisors about Maner's conduct. At the direction of DA Fladager, Chief DDA Harris convened a meeting with Ms. Ybarra, Mr. Loya, Ms. Ybarra's niece, Tina Cantu, Maner's former supervisor Chief DDA Begen, and Maner. During the meeting, DDA Harris directed Maner to appropriately include and otherwise keep Ms. Ybarra informed of case developments in conformance with Marsy's law.[3] (SUF 64-67.)

On April 16, 2012, Maner appeared in court and continued the trial date for Ms. Ybarra's brother's case without conferring with Ms. Ybarra and Mr. Loya, even though they were sitting in the front of the courtroom. Maner then left the courtroom without talking to Ms. Ybarra. On April 19, 2012, Ms. Ybarra directly complained about Maner to

---

[3] Generally speaking, Marsy's Law amended the California Constitution to provide certain rights to victims and their families, including the right to a speedy trial and to reasonably confer with the prosecuting attorney and receive notice of certain case events. (Cal. Const., Art. I, §28.)

ADA Shipley, who forwarded the complaint to DA Fladager and Chief DDA Harris. On April 23, 2012, Ms. Ybarra communicated to Chief DDA Harris that she was still unhappy with Maner's treatment of her. On April 28, 2012, DA Fladager attended a victim's rights event sponsored by the County and a local victims' rights organization. Ms. Ybarra and her Advocate also attended the event and upon meeting DA Fladager, Ms. Ybarra burst into tears and complained that Maner, as the prosecutor on the case, had mistreated her, ignored her, and made her feel uncomfortable. Ms. Ybarra also asked that another attorney be assigned to the case. (SUF 71-73.)

After learning of Ms. Ybarra's continued complaints, ADA Shipley instructed the ODA HR Manager, Mr. Bawanan, to open an investigation into Maner's conduct related to Ms. Ybarra. Mr. Bawanan completed his investigation in October 201. Prior to any decision was made regarding recommending the appropriate level of discipline for the conduct encompassed in the 2012 investigation, the ODA received new complaints against Maner from the Presiding Judge of the Juvenile Court. (SUF 74, 75, 77, 78.)

### I. THE PRESIDING JUDGE OF THE COUNTY JUVENILE COURT IDENTIFIES MANER AS A "BULLY" AND REQUESTS THE ODA TAKE APPROPRIATE ACTION

In March 2012, Maner was assigned to Juvenile Court. Nine months into the new assignment, the Presiding Judge of the Court wrote a two-page letter to DA Fladager complaining about Maner's rude and discourteous conduct in Juvenile Court. The Presiding Judge's December 2012 letter states, "Doug Maner is simply a bully. We will no longer tolerate this behavior." The letter described an occasion where Maner treated a defense attorney disrespectfully by blocking his path and threatening his arrest. She also described other occasions where Maner was unapologetically late to Court and was rude to a Judge in her own courtroom. DA Fladager had never received such a letter from a Presiding Judge. She felt DDA Maner's conduct was disrespectful to a sitting judge and that he had again diminished the role of the ODA and hindered its ability get good results. (SUF 68, 78.)

Per the direction of ADA Shipley, new ODA HR Manager Cari Griffin opened an administrative investigation regarding Maner's Juvenile Court conduct in February 2013.

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

1   The investigation encompassed all the incidents mentioned in the Presiding Judge's

2   letter, as well as allegations from Chief DDA Harris that Maner falsely blamed a clerical

3   employee for his own failure to follow proper court procedure with regard to calendaring

4   the appearance of a minor, and a complaint from a courtroom clerk that Maner said,

5   "look what the cat dragged in" when the clerk entered a courtroom. (SUF 79.)

6   **J.      MANER IS PLACED ON PAID ADMINISTRATIVE LEAVE**

7           The investigation of Maner's Juvenile Court conduct concluded in May 2013; all

8   charges were sustained, including that Maner made dishonest statements in his

9   administrative interview. After reviewing both the 2012 and 2013 investigatory findings,

10  as well as Maner's disciplinary history, ADA Shipley decided that termination was

11  warranted. ADA Shipley's Notice of Intended Discharge was issued to Maner on June

12  14, 2013. At the same time, Maner was also served with written notice that effective

13  immediately, he was being placed on paid administrative leave, pending the outcome of

14  the disciplinary process. Placing an employee on paid administrative leave pending the

15  outcome of a disciplinary process is specifically authorized by Stanislaus County Code

16  Chapter 3.28.090(B). (SUF 81-84.)

17          The Notice of Intended Discharge set forth the basis for the proposed discharge

18  and provided Maner with the right to respond to the proposed action at a pre-disciplinary

19  *Skelly* conference. Maner's *Skelly* conference took place on June 28, 2013. DA Fladager

20  was the *Skelly* officer. Both Maner and his union representative, Mike Eggener, attended

21  and spoke at the *Skelly* conference. During the *Skelly conference*, Maner complained

22  that DA Fladager was biased against him due to his 2006 support of Cummins. This was

23  the first time Maner had made such a complaint to ODA management staff. (SUF 84, 86-

24  88.)

25          After the June 28, 2013, *Skelly* conference, DA Fladager directed the ODA

26  investigator to perform supplemental investigation into Ms. Ybarra's complaints. Based

27  on the supplemental investigation, DA Fladager dropped one of the charges against

28  Maner but still believed ADA Shipley's recommendation to propose termination was

    warranted. Maner was then issued an Amended Notice of Intended Discharge on July

    19, 2013. The Amended Notice set forth the basis for the discipline and provided Maner

with the opportunity for a new *Skelly* conference. Previously, DA Fladager asked County Sheriff Adam Christianson if he would serve as the *Skelly* officer in Maner's upcoming *Skelly* conference. DA Fladager believed this was appropriate because she had been interviewed in the supplemental investigation and because of the issue Maner raised at his June *Skelly* conference about possible bias. After issuing the Amended Notice and setting up a replacement *Skelly* officer, DA Fladager had no further input into the disciplinary process with regard to the proposed discharge. (SUF 89, 91-96.)

### K.    MANER IS SUSPENDED

A new *Skelly* conference was held on August 5, 2013, at which Maner and his representative, Michael Eggener, again had the opportunity to present Maner's side of the story in response to the charges listed in the Amended Notice. Sheriff Christianson was the *Skelly* officer. After the *Skelly* conference, Sheriff Christianson reviewed all the evidence before him and decided that Maner should serve a thirty day suspension in lieu of the proposed termination. Sheriff Christianson also required Maner to attend counseling and/or team building classes related to workplace conduct, behavior, and interpersonal relationships, and participate in a Corrective Action Plan upon his return. The Order for Suspension was dated August 23, 2013. Sheriff Christianson did not consult anyone in the ODA's office before making his decision to suspend Maner. As set forth in the Order for Suspension, Maner had the opportunity to appeal his suspension. Maner timely appealed his suspension and requested the appeal be submitted to binding arbitration. Maner served his unpaid suspension from August 26, 2013, through October 4, 2013. October 7, 2013, was supposed to be Maner's first day back at work after his suspension. (JUF 13, 15, 16; SUF 97-99, 105.)

### L.    MANER QUITS HIS JOB

On September 26, 2013, Maner's union representative informed the County that Maner had voluntarily dropped the appeal of his suspension. On October 4, 2013, Chief DDA Harris informed Maner he was assigned to a new assignment with chief functions. On October 7, 2013, Maner submitted a resignation letter to ODA HR Manager, Cari Griffin. The resignation letter claimed Maner had endured a hostile work environment and was given "punishment assignments." The next day, Ms. Griffin contacted Maner via

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

1   letter to address his hostile work environment claim. Maner did not respond to Ms.

2   Griffin's letter. The County nevertheless opened an investigation of Maner's hostile work

3   environment claim. The investigation concluded that Maner was not subjected to a

4   hostile work environment. Maner filed the instant lawsuit on April 10, 2014. (JUF 18, 19;

5   SUF 110.)

6   **III.   ARGUMENT**

7       **A.   LEGAL STANDARD**

8       Summary judgment is appropriate if the evidence shows that there is no genuine

9   issue of material fact and that the moving party is entitled to judgment as a matter of law.

10   (Fed. R. Civ. P. 56(c).) The moving party bears the initial burden of offering proof of the

11   absence of any genuine issue of material fact. (*Celotex v. Catrett*, 477 U.S. 317, 330

12   (1986).) When the party moving for summary judgment would not have the burden of

13   persuasion at trial, it may meet its burden on summary judgment by submitting

14   "affirmative evidence that negates an essential element of the nonmoving party's claim,"

15   or by demonstrating "that the nonmoving party's evidence is insufficient to establish an

16   essential element of the nonmoving party's claim." (*Id.* at 331.)

17       **B.   FLADAGER IS ENTITLED TO SUMMARY JUDGMENT ON MANER'S FIRST AMENDMENT CLAIMS**

18       Maner's first and second causes of action allege DA Fladager retaliated against

19   Maner for exercising his First Amendment right to engage in political speech and freely

20   associate with persons. (Appendix, Ex. 73, ¶¶21, 22, 26, 27.) Maner must demonstrate

21   he engaged in activity protected by the First Amendment, he was subjected to adverse

22   action, and that the protected activity was a substantial or motivating factor for the

23   adverse actions. (*Ulrich v. City and County of San Francisco,* 308 F. 3d 968, 976 (9th

24   Cir. 2002).) If Maner demonstrates these elements, the burden shifts to DA Fladager to

25   show the same decisions would have made even in the absence of protected activity.

26   (*Eng v. Cooley,* 552 F. 3d 1062, 1072 (9th Cir. 2009).)

27       **C.   MANER DID NOT ENGAGE IN PROTECTED 1ST AM. ACTIVITY**

28           **1.   No Protected Speech**

    The 1st Am. protects speech when it was spoken in the employee's capacity as a

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

1 private citizen, rather than a public employee, and relates to an issue of public concern.

2 (*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).) Maner bears the burden to make this

3 showing. (*Desrochers v. San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009).)

### a. Maner's 2006 Letter to the Editor was Not Protected Speech

5 Maner alleges his May 2006 Letter to the Editor ("Letter") was protected speech.

6 However, the Letter is a technical essay on the minutiae of a DA's office, written by a

7 DDA, for no public purpose. Maner's byline states he is a "prosecutor" from "Oakdale," a

8 city in Stanislaus County. (JUF 4.) This byline necessarily indicates he is writing as a

9 prosecutor for County, not as a private citizen. The content of the letter further supports

10 its author is a County DDA. It addresses highly-technical, inner-workings of a DA's office

11 and contains information only an employee of the DA's office would know. (JUF 4.) It is

12 purely a product of his employment as a DDA at the ODA, not made in his capacity as a

13 private citizen. (*Eng, supra,* 552 F. 3d at 1071 – "[s]tatements are made in the speaker's

14 capacity as a citizen … if the speech was not the product of 'performing the tasks the

15 employee was paid to perform.' [Citation omitted.]")

16 "Whether an employee's speech addresses a matter of public concern must be

17 determined by the content, form, and context of a given statement, as revealed by the

18 whole record." (*Connick v. Myers*, 461 U.S. 138, 147-48 (1983).) Maner's letter makes

19 no reference to an election, a candidate, or DA Fladager. Arguably, the letter does not

20 convey any particular message to the public; the letter is primarily an expert opinion on

21 the minutiae of the ODA. The letter is not protected speech. (See *Desrochers, supra,*

22 572 F.3d at 710 – no public concern where speech is focused on "employee's

23 bureaucratic niche.")

### b. 2006 Meeting with Fladager was Not Protected Speech

24 Maner alleges he engaged in protected speech when he met with DA Fladager at

25 work, "several months" after her June 2006 election and told her he supported Cummins.

26 (Appendix, Ex. 75, 33:22-34:12.) Maner also alleges he explained his commitment to the

27 ODA, and to otherwise extoll his own virtues and successes to his new boss. (*Id.* at

28 37:13-38:21.) This meeting was not protected speech.

When evaluating the context component of speech on a matter of public concern, the 9th Circuit asks, what is "the point of the speech?" (*Desrochers, supra,* 572 F. 3d at 715; see also *Gilbrook v. City of Westminister,* 177 F.3d 839, 866 *(9th Cir. 1999)* "[a]n employee's **motivation . . .** [is] relevant to the **public-concern** inquiry.") Here, the point of Maner's speech was to boost his professional standing and convince his boss that he was loyal. Maner's self-promotion was not a matter of public concern. Moreover, the meeting was on-duty and in his capacity as an employee – not a private citizen. Statements made by Maner during the alleged 2006 meeting with DA Fladager were not speech.

### c.   Maner's June 2013 *Skelly* Conference

At Maner's June 2013 *Skelly* conference, Maner stated he believed DA Fladager was biased against him due to his 2006 support of DA candidate Cummins. (SUF 87.) This utterance was not protected speech because Maner was speaking in his capacity as an employee at a pre-discipline meeting– not as a private citizen. Furthermore, Maner's motivation in making the statement was not to express his opinion about a matter of public concern. Rather, the point of the speech was to exonerate himself from charges of misconduct by blaming DA Fladager. This is not a matter of public concern. These statements were not protected speech.

### 2.   **No Protected Expressive Activity**

Maner's second cause of action for associational retaliation is based on Maner's 2006 association with political opponents of DA Fladager. (Appendix, Ex. 73: ¶26.) Associational rights only extend to groups engaged in expressive activities. (*Blaisdell v. Frappiea*, 729 F. 3d 1237, 1246 (9th Cir. 2013), citing *Boy Scouts of America v. Dale*, 530 U.S. 640, 655 (2000).) Here, Maner cannot show his association with a group. Maner's 2006 Letter to the Editor does not associate Maner with a group of DA Fladager's political opponents. (JUF 4.) Rather, the letter addresses the minutiae of the inner workings of an office and makes only an oblique reference to Cummins; the letter makes no reference to DA Fladager, politics, an election, or any particular candidacy. (*Id.*)

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

As for Maner's claim that he voiced support for Cummins at a meeting with DA Fladager "several months" after the June 2006 DA election, the only proof of such comments is Maner's own self-serving testimony. (Appendix, Ex. G, ¶4.) Further, Maner claims to have attended political fundraisers for DA candidate Cummins in 2006 while he was off-duty but presents no evidence that anyone at the ODA had knowledge of said activity. (Appendix, Ex. 75, 33:12-17.) And although Maner may have complained in June 2013 that DA Fladager was biased against him for his 2006 support of DA candidate Cummins, no adverse action was taken against him after that utterance. In fact, Maner's proposed discipline was _reduced_ from discharge to suspension. (SUF 99.)

### D. THE CONDUCT MANER COMPLAINS OF IS NOT ADVERSE OR IS TIME-BARRED

The gravamen of Maner's claims is that he was constructively discharged. This claim fails because Maner's working conditions were not intolerable; rather, Maner voluntarily quit his job in 2013 to open his own criminal defense firm. Further, Maner's 2013 suspension is not actionable because it was not final, and all remaining alleged acts are time-barred. The conduct alleged is insufficient to show §1983 liability.

### 1. Maner Was Not Constructively Discharged

All of Maner's claims are predicated on a theory of constructive discharge. To establish constructive discharge, Maner must prove his working conditions at the time of his resignation were so intolerable that a reasonable person in his position would have been compelled to resign, and that the employer either intentionally or knowingly permitted the intolerable working conditions. (*King v. AC & R Advertising*, 65 F. 3d 764, 767 (9th Cir. 1995).) Where a plaintiff's decision to resign was unreasonable as a matter of law, summary judgment is appropriate. (*Id.* – "[a]n employee cannot simply 'quit and sue,' claiming he or she was constructively discharged." (Citations omitted.))

Maner resigned on October 7, 2013. Between June 14, 2013, and October 7, 2013, he had only worked at the ODA for ten days. (JUF 14, 15, 19.) No adverse action was taken against him after June 14, 2013. In fact, apart from ten days at work, which occurred more than a month prior to his resigning, Maner was not subject to _any_ working conditions at the ODA for four months. Thus, it is not possible that Maner's working

Liebert Cassidy Whitmore
-A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

conditions on October 7 were so intolerable that he had no choice but to quit. (See *London-Marable v. Boeing Co.*, 357 Fed. Appx. 61, 63 (9th Cir. 2009).)

On October 4, 2013, Maner was informed he would start the Collateral Support Assignment, the high-level, Chief DDA-responsibility assignment, upon his return. (JUF 18; SUF 107.) It is simply not possible for Maner to have known whether his working conditions in his new assignment would have been intolerable upon his return. And while Maner may have been unhappy with the CSA, "constructive discharge cannot be based upon the employee's subjective preference for one position over another." (*Poland v. Chertoff*, 494 F. 3d 1174, 1185 (9th Cir. 2007), quoting *Jett v. Dallas Indep. Sch. Dist.*, 798 F. 2d 748, 755 (5th Cir. 1986).) All DDAs rotate through assignments and Maner himself rotated through more than ten. (SUF 3, 4.) Because transfer to a new assignment was not extraordinary, Maner's transfer to CSA would not cause a reasonable person to feel forced to quit. (*Poland, supra,* 494 F. 3d at 1185 – "'[a]n employee may not…be unreasonable sensitive to a change in job responsibilities.' [Citation omitted.]") Regardless, reassignment – or even demotion – without an accompanying loss in pay does not constitute constructive discharge. (See *Metzger v. Martinez*, 48 Fed. Appx. 660, 665 (9th Cir. 2002); see also *King, supra,* 65 F. 3d at 768-9 – "demotion, even when accompanied by a reduction in pay, does not by itself trigger a constructive discharge.")

Plus, Maner's constructive discharge claim fails on the sole basis that Maner quit without pursuing other alternatives with his employer. (*Poland, supra,* 494 F. 3d at 1186 – "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged. [Citation omitted.]") Maner did not give the ODA a chance to work out whatever problems he was having. Maner could have filed a grievance via his union, a complaint with Human Resources, or even shared his concerns with his supervisor. However, Maner did no such thing; he simply resigned. (JUF 19; SUF 88.) Indeed, the day after his resignation, October 8, 2013, the ODA HR Manager, Cari Griffin, asked Maner to contact her regarding his complaint of a hostile work environment at the ODA. Maner never responded. (SUF 123.) In sum, despite numerous options to notify his employer of, or otherwise improve, what he claims was an

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

1    intolerable work environment, Maner refused to avail himself of any such options.

2    Finally, the Ninth Circuit provides numerous examples of much more intolerable

3    working conditions than those suffered by Maner that nevertheless <u>did not give rise</u> to a

4    constructive discharge claim. For example, in *Huskey v. City of San Jose*, 204 F. 3d 893

5    (9th Cir. 2000), the Court found no constructive discharge where a District Attorney had

6    been (1) assigned cases he viewed as beneath him, (2) criticized, (3) given the cold

7    shoulder, (4) referred to counseling, and (5) told by his supervisor that he should find

8    work elsewhere. (*Id.* at 901.) In *Schnidrig v. Columbia Mach.*, 80 F. 3d 1406 (9th Cir.

9    1996) the Court found no constructive discharge where plaintiff was (1) replaced as

10   head of company by a younger employee and not assigned a new position, (2) paid less

11   than lower-level employees, (3) forced to move into a smaller office, (4) excluded from a

12   lunch meeting, and (5) isolated from other employees. (*Id.* at 1411.) In *Steiner v.

13   Showboat Operating Co.,* 25 F. 3d 1459 (9th Cir. 1994), the Court found no constructive

14   discharge where plaintiff was (1) marked below standards on a performance evaluation,

15   (2) assigned a task she was incapable of performing, and (3) publicly ridiculed by her

16   supervisor. (*Id.* at 1465-66.) Maner's allegations do not rise to the level of intolerable

17   articulated in these examples, which themselves did not rise to the level of intolerable

18   required under the law. Summary judgment is warranted on Maner's constructive

19   discharge claim.

       **2.    <u>Maner's 2013 Suspension Was Not Final and Thus Not an
20            Adverse Employment Action</u>**

21     Maner's 30-day suspension in 2013 was not an adverse action because it was

22   subject to modification by the County. On August 29, 2013, Maner appealed the 30-day

23   suspension imposed by Sherriff Christianson. (JUF 13.) This was the same mechanism

24   Maner used to successfully reduce his 2008 suspension to a Letter of Reprimand. (JUF

25   7.) But on September 23, 2013, Maner abandoned his appeal, and quit on October 7.

26   (JUF 19; SUF 110.) Because the 2013 suspension "could have well been changed on

27   appeal, it was not sufficiently final to constitute an adverse employment action." (*Brooks

28   v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).)

### 3. Maner's other Alleged Adverse Employment Actions are Time-Barred and/or are Not Adverse

The statute of limitations for a §1983 claim is two years. (See *Action Apart. v. Santa Monica*, 509 F. 3d 1020, 1026 (9th Cir. 2007); see also *Maldonado v. Harris*, 370 F. 3d 945, 954 (9th Cir. 2004).) Even though Maner claims to have experienced discrete retaliatory acts as early as 2007, Maner did not file his complaint until April 10, 2014. (SUF 124.) Thus all alleged unlawful conduct occurring before April 10, 2012, is time barred. (See *Campos v. City of Irwindale,* 593 Fed. Appx. 703, 703 (9th Cir. 2015).) This includes his March 2012 transfer to Juvenile Court, his 2011 Letter of Reprimand, his 2009 transfer to a calendar deputy assignment, his 2009 Letter of Reprimand, and his 2007 transfer out of his gang prosecution assignment.

Maner cannot rely on a continuing violations theory to save these time-barred actions. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." (*National v. Morgan*, 536 U.S. 101, 113 (2000).) In *Campos v. City of Irwindale*, 2013 WL 550499 (C.D. Cal. 2013), the plaintiff filed his 1st Amendment retaliation complaint in July 2012 but alleged "discrete retaliatory acts" dating back to August 2008. (*Id.* at *3.) The Court held the district court properly excluded any asserted adverse actions that occurred before July 2010. (*Id.*) In *Carpinteria v. Santa Barbara*, 344 F.3d 822 (9th Cir. 2003), the Court stated "we have applied *Morgan* to bar §1983 claims predicated on discrete time-barred acts, notwithstanding that those acts are related to timely-filed claims." (*Id.* at 829.) In *Eng v. Cooley,* the district court rejected the plaintiff's argument that the County's "conduct against [him] was a series of separate [retaliatory] acts that collectively constitute one unlawful ... practice," and found that all acts occurring outside the statutory time period were time-barred. (*Eng, supra,* 552 F.3d at 1098.)

Here, the only complained of events that occurred within the two-year statute were Maner's 30-day suspension and assignment to the Collateral Support Assignment. Because the 30-day suspension was not final, it was not an adverse action. (*Brooks, supra,* 229 F.3d at 929.) Moreover, a transfer with no loss in pay is not an adverse action. For that matter, neither is a written reprimand. (*Hellman v. Weisberg,* 360 Fed.

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

Appx. 776, 779 (9th Cir. 2009) – reprimand insufficient to support First Amendment retaliation claim.)

### 4. No Showing Fladager was Involved in Adverse Actions

An individual defendant can only be liable under §1983 if he or she _caused_ or was _personally involved_ in the alleged constitutional deprivation. (*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011; see also *O'Haire v. Napa State Hosp.*, No. C 09-2508 RMW PR, 2012 WL 762076, at *8 (N.D. Cal. 2012.) An individual defendant cannot be liable under §1983 on the basis of *respondeat superior* liability. (*Lewis v. Mitchell*, 416 F. Supp. 2d 935, 945 (S.D. Cal. 2005.) For DA Fladager to be liable under §1983, Maner must show that she personally violated the Constitution, "through the _official's own individual actions_." (*OSU State Alliance*, 699 F. 3d 1053, 1069 (9th Cir. 2012) (emphasis added.))

Causation is an individualized inquiry, "focus[ing] on the duties and responsibilities of each individual defendant." (*O'Haire, supra,* 2012 WL 762076, at *7.) Thus, Maner must demonstrate "facts, not simply conclusions, that show that an individual was *personally involved* in the deprivation of his civil rights." (*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (emphasis added); see also *Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) – "there _must be a showing of personal participation_ in the alleged rights deprivation" (emphasis added); *Vance v. Peters*, 97 F.3d 987, 991 (9th Cir. 1996).) Maner voluntarily quit (see above); not constructively discharged. Thus there is no constitutional deprivation of civil rights for which DA Fladager could be liable. Furthermore, DA Fladager was not personally involved in any of the adverse actions alleged.

- Maner alleges his March 2007 transfer out of the gang unit was an adverse action. (Appendix, Ex. 74, ¶5.) Even if true, _DA Fladager did not personally cause the transfer_. The Chief DDAs and ADA Shipley are responsible for rotating DDA assignments. (SUF 34.) Regardless, this discrete act is time-barred and not adverse.

- As for the 2007 disciplinary investigation and ensuing proposed suspension, _DA Fladager was not personally involved._ ADA Shipley initiated an investigation, and Chief DDA Begen made the decision to suspend Maner for five days. Although DA Fladager

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

upheld the proposed suspension after Maner's August 2007 *Skelly* conference, this was in her capacity as a *Skelly* Officer. Then, in 2009, the County Counsel's Office and DA Fladager agreed to reduce the suspension to a Letter of Reprimand. This is not the level of personal involvement required to establish liability.

- Maner alleges his 2009 rotation to Calendar Deputy/Dept. 6 was adverse. (Appendix, Ex. 73, ¶7.) Even if true, *DA Fladager had no personal involvement in the transfer*. The Chief DDAs and ADA Shipley caused Maner's transfer to that position. (SUF 52.)

- Maner alleges his October 2011 Letter of Reprimand was adverse. (Appendix, Ex. 73, ¶8.) Even if true, *DA Fladager was not personally involved*. ADA Shipley initiated the investigation, and Maner's supervisor, Chief DDA Begen, made the discipline decision.

- Maner alleges his 2012 rotation to Juvenile Court was adverse. (Appendix, Ex. 73, ¶9.) Even if true, *DA Fladager had no personal involvement*. The Chief DDAs and ADA Shipley caused Maner's rotation.

- DA Fladager had *no personal involvement* in the 2012 and 2013 disciplinary actions that resulted in Maner's 30-day suspension in 2013. DA Fladager was *not personally involved* in the disciplinary investigation related to the Ybarra incident. There, the disciplinary investigation was ordered by ADA Shipley. DA Fladager was *not personally involved* in the initial 2013 disciplinary investigation related to Maner's conduct in Juvenile Court. ADA Shipley ordered the investigation, and then proposed Maner's termination. Although DA Fladager ordered supplemental investigation in July 2013, the subsequent decision to impose a 30-day suspension was made by Sheriff Christianson. *DA Fladager was not personally involved* in Sheriff Christianson's decision.

## E. MANER CAN'T SHOW PROTECTED ACTIVITY WAS A SUBSTANTIAL OR MOTIVATING FACTOR FOR ANY ADVERSE ACTION

Even if, *arguendo*, Maner establishes the requisite personal involvement, Maner must also establish that Maner's protected activity was a "substantial or motivating factor" for the adverse actions he alleges. (*Eng, supra,* 552 F. 3d at 1071.) Because Maner cannot raise a triable issue of fact here, summary judgment is warranted.

### 1. Knowledge of the Protected Activity is Required

To establish his protected activity was a substantial or motivating factor, Maner must submit non-conclusory evidence that DA Fladager had knowledge of his protected activity. (*Anselmo v. Mulli*, No. 2:12-01422-WBS-EFB, 2013 WL 5817560, 14 (E.D. Cal. 2013) (citations omitted) – "[a] defendant's conduct cannot be motivated by a plaintiff's exercise of his First Amendment rights if he is unaware that he plaintiff exercised those rights.") There is <u>no evidence</u> that conclusively shows that DA Fladager knew of Maner's association with or speech regarding Cummins. Maner relies only on his own speculation to establish this key element, which is insufficient. (*Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3rd Cir. 1989).)

### 2. Knowledge of the Protected Activity Alone is Not Sufficient; Maner Has No Direct Evidence of Discriminatory Motive

Even if Maner demonstrates DA Fladager's knowledge of his alleged protected activity, knowledge alone, is not enough to defeat a motion for summary judgment. (*Strahan v. Kirkland*, 287 F. 3d 821, 825 (9th Cir. 2002).) The required showing is that Maner's alleged protected activity *motivated* the complained of adverse actions. (*Coszalter v. City of Salem*, 320 F. 3d 968, 973 (9th Cir. 2003).) As argued above, DA Fladager was not personally involved in the actions of which Maner complains. Moreover, those who took the complained of actions were not motivated by retaliation for Maner's protected activity. Rather, the motivation was Maner's misconduct:

• 2007 Transfer out of Gang Unit Assignment: It is undisputed that members of the Modesto Police Department's gang unit complained to the ODA about Maner's conduct in February 2007. (SUF 33.) As a result, ODA management staff rotated Maner out of his gang prosecution assignment because Maner's actions hindered the ODA's ability to prosecute gang crimes. (SUF 34.) Maner was assigned to issuance because there was a preference to assign senior attorneys with the experience to evaluate cases. (SUF 26.) The transfer was not motivated by retaliation. (*Id.*)

• 2008 Suspension: Maner alleges he was suspended in 2008 due to retaliation. (Appendix, Ex. 73, ¶6.) First of all, Maner was not ultimately suspended; the 2008

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

suspension was reduced to a Letter of Reprimand. (SUF 48.) Second, Chief DDA

Begen's proposed suspension and Letter of Reprimand were eventually issued due to

Maner's misconduct toward other employees, judges, defense attorneys, and the public

occurring between August 2006 and March 2007, not retaliation. (SUF 40, 47.)

- <u>2009 Transfer out of Issuance:</u> Maner was rotated from issuance to Dept. 6 as part of an office-wide rotation of DDAs. (SUF 52.) It was the preference to have senior DDAs like Maner assigned as calendar deputies. (*Id.*) The assignment was not motivated by retaliation. (SUF 54.)

- <u>October 2011 Letter of Reprimand:</u> Chief DDA Begen issued Maner the Letter of Reprimand for rude conduct toward partner law enforcement officers, not retaliation. (SUF 62.)

- <u>2012 Transfer to Juvenile Court:</u> Maner was transferred to Juvenile Court due to complaints he received in his Dept. 6 assignment. (SUF 68.) ODA management staff believed Maner needed to work on lower-profile cases and would be less likely to get complaints in Juvenile Court. (*Id.*) The assignment was not motivated by retaliation. (SUF 70.)

- <u>2013 Disciplinary Action:</u> Maner alleges the disciplinary action against him that resulted in a 30-day suspension was motivated by retaliation. (Appendix, Ex. 73, ¶10.) However, the resultant suspension was due to his history of misconduct, and new similar misconduct toward law enforcement, a victim's next of kin, his co-workers, his supervisor, a Juvenile Court judge, and other members of the public, not retaliation. (SUF 76, 80, 85, 90, 100).

- <u>2013 Transfer to CSA:</u> Maner alleges the rotation to CSA was motivated by retaliation. (Appendix, Ex. 73, ¶16.) However, Maner was assigned to the CSA because he was one of the few DDAs with the level of experience needed to perform the high-level CSA functions. (SUF 101.) Plus, the ODA management staff believed Maner would receive fewer complaints in the position. (*Id.*) It was not retaliation. (SUF 107.)

### 3. Maner Cannot Show Discriminatory Motive Through Circumstantial Evidence

With no direct evidence of discriminatory motive, Maner must resort to showing

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

retaliatory motive by proximity in time between the protected activity and the retaliatory actions; evidence that DA Fladager expressed opposition to his alleged speech; or evidence that DA Fladager's reasons for her actions "were false and pretextual." (*Ellins, supra,* 710 F.3d at 1062.) Here, Maner has no evidence that DA Fladager expressed opposition to Maner's alleged 2006 support of, or association with, Candidate Cummins. Moreover, Maner cannot show that any of the reasons for these actions were pretext for retaliation for Maner's alleged protected activity. The only way Maner can show causation is through temporal proximity.

However, unless temporal proximity is close, no causation is presumed. (See *Clark v. Breeden*, 532 U.S. 268, 273 (2001).) Maner alleges he was forced to resign in 2013 due to his 2006 support for Candidate Cummins. (Appendix, Ex. 73, ¶¶17, 20, 21, 26, 27.) The <u>seven-year</u> period between Maner's alleged 2006 protected activity and 2013 resignation is far too long to create an inference of causation. (*Clark, supra,* 532 U.S. at 274 – no causality where employment action taken <u>twenty months</u> after the protected activity; see also *Villiarimo v. Aloha*, 281 F.3d 1054, 1065 (9th Cir. 2002) – <u>eighteen-month</u> time span too long to create an inference of causation; see also *Cornwell v. Electr,* 439 F.3d 1018, 1036 (9th Cir. 2006) – <u>seven-month</u> time span between employee's complaint and termination too long to support causation). The <u>seven-year</u> time span between Maner's alleged protected activity in 2006 and October 2013 shows "no causality at all." (*Clark, supra*, 532 U.S. at 274.) There is no temporal proximity.

## F. DA FLADAGER HAD LEGITIMATE, NON-RETALIATORY REASONS FOR HER ACTIONS AND WOULD HAVE REACHED THE SAME DECISIONS ABSENT PROTECTED ACTIVITY

Even if Maner meets his burden to show that his protected activity was a substantial or motivating factor for any the adverse actions he alleges, and even if Maner establishes DA Fladager's personal involvement in the actions, DA Fladager would have acted the same way even in the absence of the protected conduct. (*Eng, supra,* 552 F.3d 1072 – government "may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action;" see also *Mt. Healthy City School Dist. Bd. of Ed. v. Doyl,* 429 U.S. 274, 287 (1977).) Maner's alleged

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

protected activity was not the "but-for" cause for action taken against him. Rather, it was Maner's own misconduct, which violated County and ODA Policy.

Specifically, multiple instances of offensive, rude, and inappropriate conduct toward other employees and the public in 2007, such as rude conduct toward Presiding Judge Silveira, knowingly urinating within feet of a woman who was painting in a restroom, shutting the door on two clerical employees who were having a conversation on either side, refusing to follow orders in a fire drill, divulging confidential case notes to a third party, and demeaning a partner law enforcement officer in an email, warranted disciplinary action – *regardless of Maner's protected activity.* Likewise, discipline was warranted in 2011 after he again demeaned partner law enforcement officers over email and in court – *regardless of Maner's alleged protected activity.* And again, discipline was warranted in 2013 due to Maner's history of misconduct, as well as multiple new instances of offensive, rude, and inappropriate conduct toward other employees and the public, such as: repeatedly ignoring a victim's next of kin and failing to adhere to Marsy's law; failing to follow the direct order of a supervisor; unprofessional comments to defense counsel, including threatening his arrest with no basis; making rude comments to a Juvenile Court judge; and commenting, "look what the cat dragged in" toward a Juvenile Court employee -- *regardless of Maner's alleged protected activity*.

### G.    MANER CANNOT ESTABLISH A DUE PROCESS VIOLATION

Maner's third cause of action alleges a procedural due process claim for deprivation of Maner's property interest in his employment. (Appendix, Ex. 73, ¶¶32, 33.) Maner must show a property interest protected by the Constitution; a deprivation of the interest by DA Fladager; and a lack of required process. (*Hutchinson v. Bear Valley Cmty. Servs. Dist.*, No. 1:15-CV-01047-JLT, 2015 WL 9304899 (Thurston, J.), at *9 (E.D. Cal. Dec. 22, 2015), citing *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).) Maner was a tenured public employee with a Constitutionally-protected property interest in his continued employment. (JUF 3.) However, Maner cannot prove DA Fladager deprived him of this interest because Maner *voluntarily quit* his DDA position; DA Fladager never terminated him.

Even if Maner could establish DA Fladager caused his termination, he cannot

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

demonstrate the deprivation of his property interest occurred without due process of law. A tenured public employee has the following basic due process rights _prior_ to termination: "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to termination. (_Cleveland Bd. of Educ. v. Loudermill_, 470 U.S. 532, 546 (1985).) A pre-termination meeting where the employee presents his side of the story, though necessary, need not be elaborate – "something less" than a full evidentiary hearing is sufficient. (_Id._ at 545.) To require more would improperly intrude on the government's interests. (_Id._) Maner received pre-disciplinary notice of the charges and evidence against him, and a pre-disciplinary meeting, i.e., "_Skelly_ conference," prior to his 2008 suspension and prior to his proposed 2013 termination. This process satisfied Maner's due process rights under the law.

### 1. Due Process Was Provided for the 2007 Proposed Suspension that was Reduced to a Letter of Reprimand

In July 2007, Chief DDA Begen issued Maner a written Notice of Intended Disciplinary Action that proposed Maner get a 5-day suspension. (SUF 37, 38.) DA Fladager was not personally involved in the action. Short term suspensions of 5 days or less do not invoke due process rights. (_Zimmerman v. City of San Francisco_, 2000 WL 1071830, *9 (N.D. Cal. 2000), citing _Civil Service Ass'n City and County of San Francisco_, 22 Cal. 3d 552, 560 (1978).) Regardless, Chief DDA Begen provided Maner with written notice of the proposed charges against him. (SUF 38, 41.) Plus, Maner was provided with a _Skelly_ conference, at which he and his representative responded to the contents of the Notice. (SUF 42.) DA Fladager was the _Skelly_ officer. After the _Skelly_ conference, DA Fladager upheld the proposed suspension. In the Order of Suspension, Maner was provided the right to appeal. Maner appealed to binding arbitration. (JUF 7.) After pre-arbitration negotiations between Maner's representative and DA Fladager, the County Counsel's Office, with DA Fladager in agreement, reduced the suspension to a Letter of Reprimand. (SUF 48, 49.) Due process was provided here.

### 2. Due Process Was Provided for the 2013 Proposed Discharge that was Reduced to a Suspension

In June 2013, ADA Shipley issued Maner a written Notice of Intended Discharge

that included the proposed charges against him. (SUF 84; JUF 10.) DA Fladager was not personally involved in the decision. Maner was also afforded the opportunity to present his side of the story at a June 28, 2013 *Skelly* conference. (SUF 86.) It lasted more than an hour. (*Id.*) DA Fladager was the *Skelly* officer. Maner and his representative, presented Maner's side of the story. (*Id.*)

At the June 2013 *Skelly* conference, Maner, for the first time, voiced concern that DA Fladager was biased toward him due to his 2006 support of Michael Cummins. (SUF 87, 88.) Although Maner claims the June 2013 *Skelly* conference was "inadequate" because DA Fladager was not impartial, (Appendix, Ex. 73, ¶¶12, 33), it is not an adjudication, and thus 'the decision maker …need not be impartial, so long as an impartial decision maker is provided at the post-termination hearing. (*Trevino v. Lassen Mun. Utility Dist.*, 2009 WL 385792 (Karlton, L.), *9 (E.D. Cal. 2009), citing *Clements, supra,* 69 F. 3d at 333, n15.) Maner's due process rights were satisfied.

After the June 2013 *Skelly* conference, DA Fladager ordered supplemental investigation of the incident involving Ms. Ybarra and dropped a charge against Maner. (SUF 89.) DA Fladager issued an Amended Notice of Intended Discharge that reflected the supplemental evidence and the dropped charge. (SUF 93.) Maner was again afforded the opportunity to respond to the Amended Notice at a new *Skelly* conference. (SUF 97.) Because DA Fladager was a witness in the supplemental investigation, and because Maner had voiced concern during his June *Skelly* conference about DA Fladager's alleged bias, DA Fladager, in an abundance of caution, requested that Sheriff Christianson serve as the *Skelly* officer. (SUF 95.) Due process was provided.

At Maner's August 5, 2013 *Skelly* conference, Maner and his representative, Eggener, responded to the charges. (SUF 97.) Sheriff Christianson reduced the proposed discipline from discharge to a 30-day suspension. (SUF 99.) In the August 23, 2013, Order for Suspension, Maner was provided the right to appeal to an evidentiary hearing. (JUF 12; SUF 105.) Maner appealed, but in September 2013, dropped his appeal. (JUF 13.) Due process was provided.

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

### 3. Maner's Reassignments and Letters of Reprimand Did not Trigger Due Process Rights.

Employment actions that do not affect an employee's compensation or pay grade do not give rise to procedural due process rights. (*Weisbuch v. County of Los Angeles*, 119 F. 3d 778, 78 (9th Cir. 1997), citing *Shoemaker v. County of Los Angeles*, 37 Cal. App. 4th 618, 627 (1995).) Although Maner claims his reassignments were demotions or otherwise gave rise to due process rights, Maner's salary and benefits remained constant despite any reassignment. (SUF 35, 53, 69, 102, 109.) No due process rights were triggered. Similarly, the Letters of Reprimand issued to Maner did not trigger any procedural due process rights. (*Zimmerman, supra,* 2000 WL 1071830 at *9 – written reprimand alone does not implicate due process requirements.) Further, DA Fladager was not personally involved in these actions.

### H. FLADAGER HAS QUALIFIED IMMUNITY FROM §1983 LIABILITY

Qualified immunity protects governmental officials performing discretionary functions from civil liability unless a reasonable government official would have known that the conduct violated clearly established federal rights. (*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).) Functions such as evaluating and disciplining employees are discretionary functions that may be entitled to qualified immunity. (*Lindsey v. Shalmy*, 29 F. 3d 1382, 1384 (9th Cir. 1994).) "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." (*Siegert v. Gilley*, 500 U.S. 226, 232 (1991).) The plaintiff bears the burden of "proving that the rights he claims are clearly established." (*Brewster v. Board of Education of the Lynwood Unified School Dist.*, 149 F.3d 971, 977 (9th Cir. 1998).) Qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law." (*Malley v. Briggs*, 475 U.S. 335, 341 (1986).)

Maner has not shown violation of a constitutional right. Maner was not constructively discharged, he voluntarily quit his job and opened his own law firm. Further, actions alleged by Maner were motivated by repeated instances of misconduct, not Maner's 2006 protected activity. (SUF 26, 40, 47, 47, 54, 70, 76, 80, 85, 90, 100,

107.) Finally, DA Fladager was not personally involved in the actions and almost every

2 action is time-barred and/or not adverse.

3     Even if, *arguendo*, this Court find that DA Fladager personally participated in a

4 constitutional violation, Fladager has qualified immunity from suit due to the 7 years that

5 lapsed between Maner's 2006 support for Cummins and his 2013 resignation. Maner

6 cannot meet his burden to show that a reasonable government official would believe that

7 subjecting Maner to discipline for misconduct 7 years after Maner's 2006 protected

8 activity violated Maner's constitutional rights. Nor can Maner show that a reasonable

9 government official would believe that the prior actions taken against Maner due to his

10 misconduct clearly violated his constitutional rights when no action was taken in

11 temporal proximity to Maner's protected activity or because of his protected activity.

### I.   LABOR CODE §§1101-1102 DO NOT APPLY TO FLADAGER OR ARE PRE-EMPTED

13     Labor Code §§1101-1102 prohibit "employers" from certain conduct – not

14 "supervisors" or "managers." Indeed, Labor Code §§1101-1102 do not provide for liability

15 of an individual supervisor; only the employer. DA Fladager was not Maner's employer;

16 Maner's employer was the. These provisions have no application to DA Fladager.

17 Further, provisions of Labor Code only apply to employees in the private sector unless

18 they are specifically and expressly made applicable to the public sector. (*Johnson v.*

19 *Arvin-Edison Water Storage Dist.*, 174 Cal. App. 4th 729, 733 (2009); see also *California*

20 *Correctional Peace Officers' Ass'n v. State of California*, 188 Cal. App. 4th 646 (2010) –

21 public employers not subject to Labor Code provisions unless expressly included.) Labor

22 Code §§1101-1102 make no mention of applicability to public employers and thus do not

23 provide a basis for liability.

24     Moreover, Government Code §§3201 *et seq.* give public employees various rights

25 to political expression. Government Code §3203 prohibits a local entity from placing any

26 restriction on political activities of employees. (Cal. Govt. Code §3203.) The provisions

27 "supersede all provisions on this subject in the general law of this state." (Cal. Govt.

28 Code §3201.) even if Labor Code §§1101-1102 applied, Government Code §§3201 *et*

seq. supersedes, i.e. preempts, Labor Code §§1101, 1102. (See *Eldridge v. Sierra View*

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

*Local Hospital District*, 224 Cal. App. 3d 311, 217, n2 (1990); see also *Lew v. Superior Court of Cal.*, No. C 06-03098 CRB, 2008 WL 728895 (N.D. Cal. 2008), *aff'd,* 348 F. App'x 227 (9th Cir. 2009); see also *California Teachers Association v. Governing Board*, 45 Cal. App. 4th 1383, 1387, n2 (1996) – Labor Code §§1101-1102 preempted by Education Code provisions narrowly focused on the political rights of employees.)

### J.  EVEN IF LABOR CODE §§1101-1102 APPLY, THERE IS NO VIOLATION

Even if Labor Code §§1101-1102 apply, DA Fladager did not violate either provision. DA Fladager did not interfere with Maner's right to engage in political activity nor retaliate against him on that basis. Rather, action against Maner was motivated by numerous, demonstrated instances of significant misconduct that occurred throughout his employment. Moreover, DA Fladager never terminated Maner's employment; Maner voluntarily quit his job to open his own private criminal defense firm.

### K. .  TORT CLAIMS ACT PROVIDES STATUTORY IMMUNITY

Under the Tort Claims Act, public employees are immune from liability for injury resulting from the exercise of discretion vested in them. (Cal. Govt. Code §820.2; see also *Caldwell v. Montoya*, 10 Cal. 4th 972, 989 (1995).) Further, under Government Code §821.6, public employees are not liable for injury caused by instituting judicial and administrative proceedings within the scope of their employment. (Cal. Govt. Code §821.6.) Disciplinary investigations and proceedings are considered judicial and administrative proceedings for purposes of §821.6 immunity. (*Vierria v. California Highway Patrol*, 2011 WL 2971170, *8 (E.D. Cal. 2011); see also *Kemmerer v. County of Fresno,* 200 Cal. App. 3d 1426, 1437 (1988).)

DA Fladager did not take adverse action against Maner, therefore his claim fails. However, if, *arguendo*, DA Fladager is found to have personal involvement in adverse actions, the actions against Maner were the result of discretionary functions and/or proceedings immunized by Government Code §§820.2, 821.6. DA Fladager is immune.

### L.  MANER IS NOT ENTITLED TO PUNITIVE DAMAGES

To recover punitive damages from an individual defendant under §1983, Maner must prove the individual's conduct "involve[d] reckless or callous indifference to the

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

federally protected rights of others" or was "malicious, wanton," or involved "oppressive acts or omissions." (*Smith v. Wade*, 461 U.S. 30, 56 (1983); *Dang v. Cross*, 422 F. 3d 800, 807 (9th Cir. 2005). Numerous courts have held that employment decisions do not rise to the level of conduct necessary to support a claim of punitive damages. In *Karcher v. Emerson Elec. Co.*, 94 F.3d 502 (8th Cir 1996), the Court held that an instruction for punitive damages should not have been given where the employer's failure to promote the plaintiff was not "outrageous." (*Id.* at 509.) In *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348 (9th Cir. 1984), the Court held that firing an employee does not constitute "outrageous" conduct for purposes an intentional infliction of emotional distress claim. (*Id.* at 1352; see also *Jones v. Tennessee Valley Authority*, 948 F.2d 258, 266 (6th Cir. 1991) – barring plaintiff from receiving promotions, bonuses, and raises was not "outrageous;" see also *Gile v. United Airlines, Inc.*, 213 F.3d 365, 376 (7th Cir. 2000) – employer's failure to accommodate transfer request to different shift insufficient to support punitive damages under the ADA.)

DA Fladager was not personally involved and did not cause the adverse actions. Even if, *arguendo*, Maner raises a triable issue of genuine fact as to her personal involvement, summary judgment on Maner's punitive damages claim is still warranted because the adverse actions alleged, i.e. transfer to different assignments, written reprimands for misconduct, and suspension for extreme misconduct, are not outrageous employment actions. There is simply no evidence that DA Fladager took any action out of maliciousness or in reckless disregard for Maner's civil rights. All action taken toward Maner was motivated by his misconduct and the ODA's interest in upholding its rules and disciplining employee's for instances of misconduct.

### M.  MANER FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AND HE FAILED TO EXHAUST HIS COLLECTIVE BARGAINING GRIEVANCE PROCEDURE

The doctrine of administrative remedies requires a party to use all available administrative procedures for relief and to proceed with a final decision on the merits before the appropriate agency before restoring to the Courts. (*Park 'N Fly v. City of South San Francisco*, 188 Cal. App. 3d 1201, 1207 (1987).) The County Code sets forth

1    an administrative process for appealing personnel actions. After demotion, suspension,

2    or termination is issued, the employee has the right to appeal to the Hearing Board. The

3    Hearing Board's decision is final, subject to writ of mandate proceedings set forth in the

4    California Code of Civil Procedure. (Appendix, Ex. 80, Chapter 3.28.070.) Here, Maner

5    failed to exhaust his administrative remedies because he dropped his appeals of both

6    his 2008 and 2013 suspensions. Because Maner failed to avail himself of his

7    administrative right to an appeal, he failed to exhaust his administrative remedies.

8        Furthermore, union members seeking redress for disputes within the scope of

9    their negotiated labor agreement must follow the grievance procedures agreed upon.

10    (*Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652-653 (1965).) Maner's negotiated

11    labor agreement provided for a grievance procedure through which Maner would have

12    had to submit his appeal of a personnel decision to binding arbitration. (SUF 122.)

13    Maner did not grieve the adverse actions of which he now complaints. (Appendix, Ex. 75,

14    123:7-9, 207:15-19; SUF 49, 88, 110.) Because Maner failed to fully pursue his

     administrative remedies, his claims are barred.

15    **N.    IF NECESSARY, PARTIAL SUMMARY JUDGMENT IS PROPER**

16        A party may move for partial summary judgment. (Fed. R. Civ. Pro 56(a).) If

17    summary judgment is denied, DA Fladager moves for partial summary judgment.

18    **IV.    CONCLUSION**

19        For all the foregoing reasons, the County respectfully requests this Court grant

20    the instant Motion for Summary Judgment, or, in the Alternative, Partial Summary

21    Judgment.

22

23    Dated: February 24, 2016                 Respectfully submitted,

24                                 LIEBERT CASSIDY WHITMORE

              By:

25                               /s/ Morin I. Jacob

26                                 Morin I. Jacob

                                Lisa S. Charbonneau

27                                 Attorneys for Defendant

                                COUNTY OF STANISLAUS,

28                                 BIRGIT FLADAGER