Morin I. Jacob, Bar No. 204598
mjacob@lcwlegal.com
Lisa S. Charbonneau, Bar No. 245906
lcharbonneau@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105
Telephone: 415.512.3000
Facsimile: 415.856.0306

Attorneys for Defendants
COUNTY OF STANISLAUS and
BIRGIT FLADAGER

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS MANER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF STANISLAUS, BIRGIT FLADAGER, and DOES 1 through 20, inclusive,,<br><br>Defendants. | Case No.: 1:14-CV-01014-MCE-MJS<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice of Motion, Memorandum of Points and Authorities, Joint Statement of Undisputed Facts, Appendix of Evidentiary Support, Request for Judicial Notice, Proposed Order, Proposed Judgment]*<br><br>Date: April 21, 2016<br>Time: 2:00 PM<br>Courtroom:7, 14th Floor<br>Judge: Morrison C. England, Jr.<br><br>Trial Date: October 24, 2016 |

TO THE COURT, PLAINTIFF, AND HIS ATTORNEYS OF RECORD:

Defendant COUNTY OF STANISLAUS and Defendant BIRGIT FLADAGER

hereby submit this Statement of Undisputed Facts in support of their respective

concurrently-filed Motions for Summary Judgment or, In the Alternative, Partial Summary

Judgment, as follows:

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Part of the job of a DDA V is to work well with others, including the ODA's staff, law enforcement officials, and the public, and perform at a level that requires minimal supervision. | Ex. H: Declaration of Carol Shipley ("Shipley Decl."), ¶6;<br><br>Ex. I: Declaration of Gerard Begen ("Begen Decl."), ¶16;<br><br>Ex. 33: Attorney V – Deputy District Attorney Job Description. |
| 2. ODA Personnel Policy 301 prohibits: overbearing attitude toward private citizens, law enforcement, or county employees. | Ex. 34: District Attorney's Office Personnel Policies ("ODA Personnel Policies"), at 34-2. |
| 3. According to ODA Personnel Policy 1900 and ODA management, DDAs at the County of Stanislaus are subject to a system of rotating assignments and handle a variety of cases and tasks while employed at the ODA. | Ex. A: Declaration of Dave Harris ("Harris Decl."), ¶18.<br><br>Ex. H: Shipley Decl., at ¶7.<br><br>Ex. 34: ODA Personnel Policies, at 34-15. |
| 4. While working at the ODA, Maner rotated through more than ten different DDA assignments. | Ex. H: Shipley Decl., at ¶¶32, 33, 42, 52, 58;<br><br>Ex. 73: Complaint, at ¶5;<br><br>Ex. 11: Performance Evaluation for the Period September 1, 2003 – September 1, 2004 ("2003-2004 Perf. Eval.");<br><br>Ex. 37: Performance Evaluation for the period September 1, 1995, to September 1, 1999 ("1995-1999 Perf. Eval.");<br><br>Ex. 38: Performance Evaluation for the period July 1, 1991, to July 1, 1992 ("1991-1992 Perf. Eval.");<br><br>Ex. 39: Performance Evaluation for the period July 1, 1992 to July 1, 1993 ("1992- |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| | 1993 Perf. Eval."); |
| | Ex. 40: Performance Evaluation for the period July 1, 1993 to December 1, 1994 ("1993-1994 Perf. Eval."); |
| | Ex. 44: Performance Evaluation for the period September 1, 2005 to September 1, 2006 ("2005-2006 Perf. Eval."); |
| | Ex. 51: Performance Evaluation for the period of September 1, 1994 to September 1, 1995 ("1994-1995 Perf. Eval."); |
| | Ex. 52: Performance Evaluation for the period of September 1, 1999 to September 1, 2000 ("1999-2000 Perf. Eval."); |
| | Ex. 53: Performance Evaluation for the period of September 1, 2000 to September 1, 2001 ("2000-2001 Perf. Eval."); |
| | Ex. 55: Performance Evaluation for the period of September 1, 2001 to September 1, 2002 ("2001-2002 Perf. Eval."); |
| | Ex. 56: Performance Evaluation for the period of September 1, 2002 to September 1, 2003; |
| | Ex. 61: Performance Evaluation for the period of September 1, 2007 to September 1, 2008 ("2007-2008 Perf. Eval."); |
| | Ex. 64: Performance Evaluation for the period of September 1, 2008 to August 31, 2009 ("2008-2009 Perf. Eval."); |
| | Ex. 65: Performance Evaluation for the period of September 1, 2009 to August 31, 2010; |
| | Ex. 66: Performance Evaluation for the period of September 1, 2010 to August 31, 2011 ("2010-2011 Perf. Eval."); |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 5. Maner's 1991/1992 Performance Evaluation states "Mr. Maner's only weak area is in his relationship with the clerical staff. He tends to order them about rather than treat them as co-workers." | Ex. H: Shipley Decl., at ¶21; Ex. 38: 1991-1992 Perf. Eval. |
| 6. Maner's 1992/1993 Performance Evaluation states "Mr. Maner's shortcomings seem to be in the area of inter-personal relations. Numerous complaints have been received from the clerical staff, from law enforcement and members of the defense bar regarding Mr. Maner's attitude and demeanor." | Ex. H. Shipley Decl., at ¶22; Ex. 39: 1992-1993 Perf. Eval.. |
| 7. Maner's 1993/1994 Performance Evaluation states "Mr. Maner's last evaluation pointed out areas requiring improvement in his relations with staff, law enforcement, the bench and defense bar. Mr. Maner continues to fall short of the standards of this office in these areas. The clerical and steno staffs view Maner as difficult. The complaints center on Mr. Maner's attitude, demeanor and repeated refusal to comply with established policy and procedures." The evaluation goes onto state that Maner's "demands and demeanor prompted a complaint from Captain Leonard, commander of the Investigative Services Division [at the Modesto Police Department]…[and that] [c]riminal defense attorneys consider Mr. Maner arrogant and inflexible." | Ex. H. Shipley Decl., at ¶23; Ex. 40: 1993-1994 Perf. Eval. |
| 8. Maner's 1994/1995 Performance Evaluation states, "Exercising judgment…in his relationship with others tends to be Mr. Maner's 'Achilles' Heel.'…Mr. Maner exhibited impatience with non-attorney employees…Also, there had been some incidents involving | Ex. I: Begen Decl., at ¶5; Ex. 51: 1994-1995 Perf. Eval. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| **UNDISPUTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| employees of other agencies which required supervisory intervention." | |
| 9.      Maner's 1995 to 1999 Performance Evaluation states "One issue that has resurfaced with Mr. Maner's career more than once is his relationship with the clerical staff." | Ex. H: Shipley Decl., at ¶19; Ex. 37: 1995-1999 Perf. Eval. |
| 10.      Maner's 1999/2000 Performance Evaluation states "One glaring area of deficiency continues to be Mr. Maner's relationship with the clerical workers in the office…this relationship is in the midst of a deep plummet…The one drawback [that] remains is his inability to treat the clerical staff as anything but servants." | Ex. I: Begen Decl., at ¶6; Ex. 52: 1999-2000 Perf. Eval. |
| 11.      Maner's 2000/2001 Performance Evaluation states "One area of deficiency continues to be Mr. Maner's relationship with the clerical workers in the office." | Ex. I: Begen Decl., at ¶7; Ex. 53: 2000-2001 Perf. Eval. |
| 12.      Maner's 2001/2002 Performance Evaluation states "His inability to consistently treat the clerical staff in accordance with general standards of civility remains a blemish on an otherwise admirable career." | Ex. I: Begen Decl., at ¶10; Ex. 55: 2001-2002 Perf. Eval. |
| 13.      Maner's 2003/2004 Performance Evaluation states "If there was one concern that came up during the past year with Mr. Maner's performance, it was in the way he sometimes handles his personal contacts with clerical and other professional non-attorney staff in the office." | Ex. B: Goold Decl., at ¶6; Ex. 11: 2003-2004 Perf. Eval. |
| 14.      Maner's 2005/2006 Performance Evaluation states "Unfortunately, Mr. Maner continues to have periodic problems | Ex. H: Shipley Decl., at ¶¶28-29; |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| with support staff and dealing with people. He was counseled by me shortly after I started supervising him in November 2005 about complaints received by former human [sic] Relations Manager Kathy Matt." | Ex. 44: 2005-2006 Perf. Eval. |
| 15.    Maner's 2007/2008 Performance Evaluation states "One area in which he needs improvement is conforming his conduct to established office procedure; he tends to want to do things his way, requiring others to make room for it…The undersigned and others have had to devote an inordinate amount of time to get Mr. Maner to do what his fellow DDAs have no trouble doing." | Ex. I: Begen Decl., at ¶23; Ex. 61: 2007-2008 Perf. Eval.. |
| 16.    Maner's 2008/2009 Performance Evaluation states "There was only one negative comment received from a clerical worker who said she is afraid to interact with Mr. Maner, i.e. enter his office for filing, etc." | Ex. I: Begen Decl., at ¶26; Ex. 64: 2008-2009 Perf. Eval. |
| 17.    Maner's 2010/2011 Performance Evaluation states "In the spring of 2011, the office received two complain [sic] of rude or impolite behavior on Mr. Maner's part…The area of 'people skills' continues to challenge him and limits his horizons." | Ex. I: Begen Decl., at ¶28; Ex. 66: 2010-2011 Perf. Eval. |
| 18.    In January 2001, the ODA received a complaint from a paralegal who alleged she had been harassed by Maner and that he had created a hostile work environment. Between January and March 2001, the ODA's Human Resources Manager, Kathy Matt, conducted an administrative investigation into the paralegal's allegations against Maner. | Ex. I: Begen Decl., at ¶¶7, 8; Ex. 53: 2000-2001 Perf. Eval.; Ex. 54: Memorandum from Matt, dated March 5, 2001. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 19.    Based on the findings of the ODA's investigation, Maner's supervisor at the time, Chief DDA Begen, concluded that Maner had used profanity in the office in violation of the County's anti-harassment policy.  Chief DDA Begen verbally counseled Maner in 2001 for this misconduct. | Ex. I: Begen Decl., at ¶9; Ex. 53: 2000-2001 Perf. Eval.; Ex. 54: Memorandum from Matt, dated March 5, 2001. |
| 20.    In 2003, Maner was counseled by his supervisor at the time, Chief DDA John Goold, to improve his communications with the clerical staff after he was overhead being condescending and arrogant. | Ex. B: Goold Decl., at ¶5. Ex. 13: Letter of Reprimand, dated April 4, 2004. |
| 21.    In January 2004, an ODA paralegal complained that Maner had spoken to her in a loud, angry, and demeaning way, reducing her to tears.  Due to the complaint, Maner's supervisor, Chief DDA Goold asked the ODA's HR Manager to conduct an investigation into the paralegal's allegations. | Ex. B: Goold Decl., at ¶6, 7. Ex. 12: Memorandum from Kathy Matt, dated January 20, 2004 ("01/20/04 Memo"). Ex. 13: Letter of Reprimand, dated April 2004. |
| 22.    The ODA's 2004 investigation found that Maner's demeanor and conduct toward the paralegal was inappropriate in violation of County and ODA personnel rules. | Ex. 11: 2003-2004 Perf. Eval.; Ex. 12: 01/20/04 Memo; Ex. 13: Letter of Reprimand, dated April 2004. |
| 23.    After the conclusion of the 2004 investigation, Chief DDA Goold, reviewed the investigatory findings in preparation for taking disciplinary action.  Chief DDA Goold decided this instance of misconduct, taken together with Maner's performance and discipline history, warranted a Letter of Reprimand and attendance at workshops called "People skills" and "Managing Your Anger."  The Letter of Reprimand was | Ex. B: Goold Decl., at ¶8; Ex. 13: Letter of Reprimand, dated April 6, 2004. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| dated April 6, 2004. | |
| 24.    In September 2005, three members of the ODA's clerical staff complained to Acting District Attorney Carol Shipley about Maner's rude conduct toward them.  As a result, Acting District Attorney Shipley directed the ODA's HR Manager, Kathy Matt, to conduct an administrative investigation the allegations.  Another complaint was included while the investigation was underway.  Ms. Matt conducted the investigation between September and December 2005. | Ex. H: Shipley Decl., at ¶¶24, 25;<br><br>Ex. 41: Memorandum from Matt, dated December 7, 2005 ("12/07/05 Memo."). |
| 25.    Ms. Matt's 2005 investigatory findings were: (1) in June 2005, Maner called a clerical employee "incompetent" in open court; and (2) that Maner was condescending and insulting to a paralegal in September 2005. | Ex. H: Shipley Decl., at ¶25;<br><br>Ex. 41: 12/07/05 Memo. |
| 26.    After the conclusion of the 2005 investigation, Acting District Attorney Shipley reviewed the investigatory findings in preparation for taking disciplinary action. Based on the information before her, Acting District Attorney Shipley and Maner's supervisor Chief DDA Steve Casey decided this instance of misconduct warranted written counseling and attendance at classes called "Gender Communication" and "the Art of Communication." The written counseling memorandum was dated December 15, 2005. | Ex. H: Shipley Decl., at ¶26;<br><br>Ex. 42: Memorandum from Casey, dated December 15, 2005. |
| 27.    In February 2006, two physician witnesses complained to the ODA about Maner's conduct in connection with a subpoena.  Maner's supervisor at the time, Chief DDA Casey, brought this to Maner's | Ex. H: Shipley Decl., at ¶¶ 28, 29;<br><br>Ex. 44: 2005-2006 Perf. Eval. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| attention in his 2005-2006 performance evaluation. | |
| 28. In May 2006, an ODA clerk complained that Maner had been rude to her and had been unreasonable in the work he assigned to her. On May 10, 2006, Maner was verbally counseled by his supervisor, Chief DDA Casey, for inappropriate conduct toward a member of the clerical staff. He was also reminded to take the "Gender Communication" class he was told to take in December 2005. | Ex. H: Shipley Decl., at ¶27; Ex. 43: Email from Casey, dated May 10, 2006. |
| 29. In August 2006, Presiding Judge Silveira complained Maner was rude and unprofessional to her on the record. After looking into the Judge's complaint, now-Assistant District Attorney ("ADA") Shipley and Chief DDA Casey, Maner's direct supervisor, decided he had inappropriately lashed out at the Judge, to the detriment of the ODA and the case. Chief DDA Casey, brought this to Maner's attention in his 2005-2006 performance evaluation. | Ex. H: Shipley Decl., at ¶ 29; Ex. 44: 2005-2006 Perf. Eval. |
| 30. Between September 2006 and January 2007, ADA Shipley and DDA Maner's new supervisor, Chief DDA Gerard Begen, continued to receive complaints about Maner's conduct. In January 2007, ADA Shipley, in consultation with Chief DDA Begen, directed the ODA's HR Manager, Ramon Bawanan, to investigate the complaints against Maner. | Ex. H: Shipley Decl., at ¶30; Ex. I: Begen Decl., at ¶14. |
| 31. ADA Shipley initiated the administrative investigation due to allegations of Maner's misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected | Ex. H: Shipley Decl., at ¶¶30, 70, 71. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| classification, or retaliation. | |
| 32.    Between January and April 2007, Mr. Bawanan conducted an administrative investigation into allegations of Maner's inappropriate conduct during the time period October 2006 through February 2007. Another complaint was included while the investigation was underway. | Ex. H: Shipley Decl., at ¶¶30, 31; Ex. I: Begen Decl., at ¶18; Ex. 59: Investigation Summary and 10-Day Suspension Recommendation, 2007 ("2007 Inv. Summ."); |
| 33.    Mr. Bawanan's 2007 investigatory findings were: (1) in October 2006, Maner entered a restroom and used a urinal only a few feet away from a female who was in the restroom painting the interior; (2) in January 2007, Maner abruptly shut the door to a copy room while two clerical employees were having a conversation on either side of the door; (3) in January 2007, Maner refused orders to evacuate during a fire drill and advised a clerk to similarly ignore the drill; (4) in January 2007, Maner read another attorney's confidential case notes to an outside third party in violation of ODA policy; and (5) in February 2007, Maner sent an inappropriate and highly critical email to members of one of the Gang Intelligence Taskforce, which negatively impacted the relationship between the ODA and the Taskforce. | Ex. H: Shipley Decl., at ¶31; Ex. I: Begen Decl., at ¶18; Ex. 59: 2007 Inv. Summ. |
| 34.    In March 2007, the Chief DDAs and ADA Shipley, in consultation with DA Fladager, decided to rotate Maner out of his gang prosecution assignment due to the inappropriate and rude email Maner sent to the Gang Intelligence Taskforce, which hindered the ODA's ability to successfully prosecute criminal gang activity.  In addition, The ODA management staff believed issuance should be staffed by senior DDAs such as | Ex. H: Shipley Decl., at ¶32; Ex. I: Begen Decl., at ¶¶16, 17. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Maner. | |
| 35.     Rotating Maner out of his gang prosecution assignment had no effect on his salary or benefits. | Ex. H: Shipley Decl., at ¶32. |
| 36.     The Chief DDAs and ADA Shipley rotated Maner out of his gang prosecution assignment and into issuance due to his misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. H: Shipley Decl., at ¶¶32, 71; Ex. I: Begen Decl., at ¶¶16, 17, 42-43. |
| 37.     After the conclusion of the January-April 2007 investigation, then supervisor Chief DDA Begen reviewed Mr. Bawanan's investigatory findings and various performance-related documents and emails in preparation for issuing a disciplinary recommendation. Based on all the information before him, Chief DDA Begen decided Maner's misconduct, taken together with his performance and disciplinary history, warranted a five day suspension. | Ex. I: Begen Decl., at ¶¶18, 19; Ex. 60: Notice of Intended Disciplinary Suspension, dated July 26, 2007. |
| 38.     On July 26, 2007, Chief DDA Begen caused to be issued a Notice of Intended Disciplinary Suspension to Maner.  The Notice included: (1) a description of the basis for the proposed suspension; (2) all documents upon which the suspension was based; and (3) written notice that Maner had the opportunity to respond to the recommended discipline prior to its imposition. | Ex. I: Begen Decl., at ¶19; Ex. 60: Notice of Intended Disciplinary Suspension, dated July 26, 2007. |
| 39.     Chief DDA Begen proposed the five day suspension due to what he considered | Ex. I: Begen Decl., at ¶20. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| an "unprecedented" number of independent instances of staff or the public complaining about Maner's misconduct, and because the misconduct encompassed in the investigation was similar to misconduct for which Maner had been previously disciplined. Chief DDA Begen believed more serious and severe discipline was warranted. | Ex. 60: Notice of Intended Disciplinary Suspension, dated July 26, 2007. |
| 40. Chief DDA Begen based his July 2007 decision to propose a five-day suspension due to Maner's misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. I: Begen Decl., at ¶¶20, 42-43. |
| 41. Maner received the July 26, 2007, Notice of Intended Disciplinary Suspension. | Ex. 75: Deposition of Douglas Maner taken on August 21, 2015 ("Maner Depo."), at 119:15 – 120:1. |
| 42. On August 28, 2007, a pre-disciplinary *Skelly* conference regarding the proposed suspension took place. DA Fladager was the *Skelly* officer. Both Maner and his union representative, Pat Thistle, attended and spoke at the conference. | Ex. G: Declaration of Birgit Fladager ("Fladager Decl."), at ¶¶12, 14. |
| 43. After the *Skelly* conference, up through March 2008, Mr. Thistle and DA Fladager exchanged communications about the possibility of Maner attending counseling and entering into a "Last Chance Agreement" in lieu of a suspension. Under the "Last Chance Agreement," Maner would not be suspended if he agreed to all the terms of the agreement, which included attending counseling, apologizing to individuals he had offended, and following County and | Ex. G: Fladager Decl., at ¶¶15, 16; Ex. 24: Letter and Last Chance Agreement, dated March 24, 2008. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| ODA personnel rules. | |
| 44.    Ultimately, Maner did not agree to the terms of DA Fladager's proposed "Last Chance Agreement." | Ex. G: Fladager Decl., at ¶17. |
| 45.    As a result of Maner not agreeing to the terms of the "Last Chance Agreement," DA Fladager upheld Chief DDA Begen's proposed suspension without pay for five days via written notice, entitled Order of Suspension, dated August 11, 2008.  In making her decision to suspend Maner, and as set forth in the Order of Suspension, DA Fladager considered the 2007 investigatory findings, the 2007 Notice of Intended Disciplinary Suspension, Maner's performance history, and the response Maner and Mr. Thistle provided at his August 28, 2007, pre-disciplinary *Skelly* meeting. | Ex. G: Fladager Decl., at ¶¶18, 19; Ex. 25: Order of Suspension, dated August 11, 2008 ("8/11/08 Suspension Order"). |
| 46.    DA Fladager believed suspension was warranted because Maner continued to exhibit negative working relationships with the clerical staff, was willfully disobedient, had disclosed confidential information to a third party, and had sent the email to the Gang Intelligence Taskforce that negatively impacted the ODA's working relationship with law enforcement. | Ex. G: Fladager Decl., at ¶¶18, 19; Ex. 25: 8/11/08 Suspension Order. |
| 47.    DA Fladager based her decision to order suspension on Maner's misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. G: Fladager Decl., at ¶¶18-19, 45-46. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 48. Between September 2008 and March 2009, DA Fladager, Mr. Thistle, and the County Counsel's Office exchanged communications regarding Maner's appeal of the five-day suspension. In March 2009, County Counsel's Office entered into a settlement agreement with Maner to set aside the five-day suspension in exchange for Maner attending counseling on interacting with coworkers and receiving a Letter of Reprimand. DA Fladager agreed with the reduction in discipline. | Ex. G: Fladager Decl., at ¶21. |
| 49. On March 2, 2009 DA Fladager issued a Letter of Reprimand and restored Maner's five-days of lost pay, contingent upon Maner completing counseling regarding workplace interaction with co-workers and others related to Maner's work duties. In exchange, Maner dropped his appeal of the five-day suspension. | Ex. G: Fladager Decl., at ¶21; Ex. 26: Letter of Reprimand, dated March 2, 2009. |
| 50. Between May 2007 and March 2011, no administrative investigations into Maner's conduct were initiated or conducted by the County or anyone at the ODA. | Ex. C: Declaration of Cari Griffin ("Griffin Decl."), at ¶12. |
| 51. Between August 2007 and February 2011, no new proposed/intended disciplinary action against Maner was initiated by the County or anyone at the ODA. | Ex. C: Griffin Decl., at ¶12. |
| 52. Around November 2009, the Chief DDAs and ADA Shipley decided to rotate Maner out of his issuance assignment to a calendar deputy assignment as part of an office-wide rotation of DDAs. It was the intent of the ODA management to strive to have senior prosecutors like Maner | Ex. H: Shipley Decl., at ¶33. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| assigned as calendar deputies. | |
| 53.      Rotating Maner out of his issuance assignment had no effect on his salary or benefits. | Ex. H: Shipley Decl., at ¶33. |
| 54.      The Chief DDAs and ADA Shipley rotated Maner out of his issuance assignment because of workload and staffing, not his 2006 support for Candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. H: Shipley Decl., at ¶¶33, 70, 71. |
| 55.      In March 2011, Maner's then supervisor Chief DDA Begen received a complaint from Modesto Police Officer Keith Miller about Maner's snide conduct toward him and other police officers in a courtroom. | Ex. I: Begen Decl., at ¶29. <br><br> Ex. 67: Email Chain between Miller, et al., dated March 2011. |
| 56.      In April 2011, Detective Tonya Smith of the Ceres Police Department made a separate complaint about what she complained to be Maner's rude conduct. | Ex. I: Begen Decl., at ¶30; <br><br> Ex. 68: Email Chain between Smith, et al., dated April 14, 2011 ("04/14/2011 Email chain"); |
| 57.      At the direction of ADA Shipley, ODA HR Manager Ramon Bawanan and the ODA's Chief Investigator Dan Inderbitzen conducted an administrative investigation into the police officers' complaints about Maner's conduct. | Ex. H: Shipley Decl., at ¶34. <br><br> Ex. 69: Memorandum from Bawanan, dated September 29, 2011 ("09/29/11 Memo"); <br><br> Ex. 70: Memorandum from Inderbitzen, dated June 16, 2011 ("6/16/11 Memo"). |
| 58.      ADA Shipley initiated the administrative investigation due to allegations of Maner's misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with | Ex. H: Shipley Decl., at ¶¶34, 70, 71. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| any political candidate or other protected classification, or retaliation. | |
| 59. Mr. Bawanan's 2011 investigatory findings were: (1) in March 2011, Maner berated a Modesto Police Department police officer in front of other officers and citizens, then ignored the officer; (2) in April 2011, Maner upset a Ceres Police Department detective but was not disrespectful towards her; and (3) the complaints were unrelated. | Ex. H: Shipley Decl., at ¶35; Ex. I: Begen Decl., at ¶33; Ex. 68: 04/14/2011 Email chain; Ex. 69: 09/29/11 Memo. |
| 60. After the conclusion of the January-2011 investigation, supervisor Chief DDA Begen reviewed Mr. Bawanan's and Mr. Inderbitzen's investigatory findings and agreed with them. Based on the information before him, Chief DDA Begen decided this instance of misconduct, taken together with Maner's performance and discipline history, warranted a Letter of Reprimand and a Corrective Action Plan that required counseling and a written apology to the Modesto Police Department police officer. Specifically, Chief DDA Begen believed Maner had been discourteous and rude to the Modesto Police Department police officer, such conduct harmed the ODA"s relationship with partner law enforcement agencies and made it more difficult for the ODA to prosecute criminal activity. Chief DDA Begen also recalled disciplining Maner for similar misconduct in the past, further warranting the Letter of Reprimand. | Ex. I: Begen Decl., at ¶¶31, 33, 34, 35; Ex. 68: 04/14/2011 Email chain; Ex. 69: 09/29/11 Memo; Ex. 70: 6/16/11 Memo; Ex. 71: Letter of Reprimand, dated October 11, 2011. |
| 61. Chief DDA Begen issued Maner the two-page Letter of Reprimand pertaining to the March and April 2011 complaints from police officers on October 11, 2011. | Ex. I: Begen Decl., at ¶35; Ex. 71: Letter of Reprimand, dated October 11, 2011. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 62. Chief DDA Begen based his decision to issue a Letter of Reprimand on Maner's misconduct, not Maner's 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. I: Begen Decl., at ¶¶31, 33-35, 42-43. |
| 63. In November 2011, Maner's first draft of the required written apology to Officer Miller was insufficient; it did not sincerely apologize and Chief DDA Begen deemed the communication would have further damaged the ODA's relationship with law enforcement. | Ex. I: Begen Decl., at ¶¶36, 37; Ex. 72: Email Chain between Maner, et al., dated November 2011. |
| 64. In February 2012, the ODA received complaints about Maner from Mary Ann Ybarra, a victim of crime's next of kin, and Alex Loya, Ms. Ybarra's County-appointed Victim Advocate. Maner was the attorney on a case involving Ms. Ybarra's murdered brother. | Ex. A: Harris Decl., at ¶8; Ex. G: Fladager Decl., at ¶23; Ex. H: Shipley Decl., at ¶37; Ex. I: Begen Decl., at ¶40; Ex. 1: Email from Birgit Fladager, dated February 14, 2012 ("Fladager Email"). |
| 65. In a February 14, 2012, email to DA Fladager, Ms. Ybarra states, "I feel that Doug Maner is not a people person and is not working hard enough...I feel his heart is not into the case." | Ex. A: Harris Decl., at ¶8; Ex. G: Fladager Decl., at ¶23; Ex. H: Shipley Decl., at ¶38; Ex. I: Begen Decl., at ¶40; Ex. 1: Fladager Email. |
| 66. In response to the complaints, Maner's then supervisor, Chief DDA Dave Harris, held a meeting on February 16, 2012, with Ms. Ybarra, Mr. Loya, Ms. Ybarra's niece, Tina Cantu, and Chief DDA | Ex. A: Harris Decl., at ¶¶9, 10; Ex. F: Declaration of Alex Loya ("Loya Decl."), at ¶10; |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Begen. The purpose of the meeting was for Ms. Ybarra to voice her concerns about Maner's conduct and address those concerns. | Ex. I: Begen Decl., at ¶41;<br><br>Ex. 5: Memorandum from Dave Harris, 2012 ("2012 Harris Memo");<br><br>Ex. 6: Memorandum from Ramon Bawanan, dated October 17, 2012 ("12/17/12 Memo");<br><br>Ex. 45: Memorandum from Inderbitzen, dated May 6, 2013 ("5/6/13 Memo"). |
| 67.      During the February 16, 2012, meeting, Mr. Loya complained that Maner had excluded him from an important case update conversation against Ms. Ybarra's wishes. Chief DDA Harris also listened to Ms. Ybarra express that Maner had ignored her and that she did not understand what was happening on the case. That day, Chief DDA Harris directed Maner to keep Ms. Ybarra apprised of everything going on in her case. | Ex.A: Harris Decl., at ¶9;<br><br>Ex. F: Loya Decl., at ¶10;<br><br>Ex. I: Begen Decl., at ¶41;<br><br>Ex. 5: 2012 Harris Memo;<br><br>Ex. 6: 12/17/12 Memo;<br><br>Ex. 45: 5/6/13 Memo. |
| 68.      In March 2012, the Chief DDAs and ADA Shipley decided to rotate Maner into a Juvenile Court assignment due to concerns about his ability to perform serious case work and interact well with the public. | Ex. A: Harris Decl., at ¶¶19, 20;<br><br>Ex. H: Shipley Decl., at ¶42. |
| 69.      Rotating Maner to the Juvenile Court assignment had no effect on his salary or benefits. | Ex. H. Shipley Decl., at ¶42. |
| 70.      The Chief DDAs and ADA Shipley decided to rotate Maner to Juvenile Court due to concerns with his performance and misconduct, not because of his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. A: Harris Decl., at ¶¶20-21, 29-30;<br><br>Ex. H: Shipley Decl., at ¶¶42, 70, 71. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 71.    In April 2012, the ODA received additional complaints from Ms. Ybarra and Mr. Loya about Maner's conduct.  On April 16, 2012, Maner had continued Ms. Ybarra's brother's trial without speaking to her or her Victim Advocate, Mr. Loya, at the hearing, even though they were in the front of the courtroom.  Maner proceeded to ignore Mr. Loya and Ms. Ybarra after the hearing at the café in the courthouse. | Ex. A: Harris Decl., at ¶¶11-13; Ex. F: Loya Decl., at ¶11; Ex. H: Shipley Decl., at ¶39; Ex. 4: Email from Mary Ann Ybarra, dated April 23, 2012 ("04/23/12 Email"); Ex. 5: 2012 Harris Memo; Ex. 6: 12/17/12 Memo; Ex. 45: 5/6/13 Memo. |
| 72.    In an email to Chief DDA Harris dated April 23, 2012, Ms. Ybarra states that Maner "seemed a little rude" and that she would "like him to give [her] a few minutes out of his busy court scheduled to let [her] know what's going on." | Ex. A: Harris Decl., at ¶13; Ex. 4: 04/23/12 Email. |
| 73.    On April 28, 2012, Ms. Ybarra approached DA Fladager directly at a victim's rights event.  Ms. Ybarra was crying and said she was still not being treated well by Maner. | Ex. F: Loya Decl., at ¶12; Ex. G: Fladager Decl., at ¶25; Ex. 5: 2012 Harris Memo; Ex. 6: 12/17/12 Memo; Ex. 45: 5/6/13 Memo. |
| 74.    Due to the new complaints from Ms. Ybarra and her Victim Advocate, ADA Shipley directed the ODA's HR Manager, Ramon Bawanan, to open an administrative investigation into Maner's conduct toward Ms. Ybarra and related issues. | Ex. H: Shipley Decl., at ¶41; Ex. 6: 12/17/12 Memo. |
| 75.    Between May and October 2012, Mr. Bawanan conducted an administrative investigation into the February and April | Ex. H: Shipley Decl., at ¶41. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 2012 complaints about Maner's conduct from Ms. Ybarra and Mr. Loya. | Ex. 6: 12/17/12 Memo; |
| 76.    ADA Shipley initiated the administrative investigation due to allegations of Maner's misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. H: Shipley Decl., at ¶¶41, 70, 71. |
| 77.    Mr. Bawanan's 2012 investigatory findings were: (1) in February and April 2012, Maner was rude to Ms. Ybarra; (2) in April 2012, Maner failed to follow his supervisor's directive; (3) in February and April 2012, Maner did not follow Marsy's law when he failed to apprise Ms. Ybarra of the status of the proceedings; and (4) Maner was not truthful in his investigatory interview. | Ex. A: Harris Decl., at ¶¶15, 16; <br><br> Ex. H: Shipley Decl., at ¶41; <br><br> Ex. 6: 12/17/12 Memo. |
| 78.    Prior to the issuance of a disciplinary recommendation related to the investigatory findings pertaining to Ms. Ybarra, on December 26, 2012, Presiding Judge Nan Jacobs of the County Juvenile Court contacted DA Fladager to complain about Maner's conduct since being assigned in Juvenile Court. | Ex. G: Fladager Decl., at ¶¶29, 30; <br><br> Ex. H: Shipley Decl., at ¶¶41, 44; <br><br> Ex. 27: Email Chain between Birgit Fladager, et al., dated December 21, 2012; <br><br> Ex. 28: Letter from Judge Nan Jacobs, dated December 26, 2012. |
| 79.    After receipt of Judge Jacobs' complaint, ADA Shipley ordered ODA HR Manager, Cari Griffin, to investigate Maner's alleged misconduct in Juvenile Court.  Between February and May 2013, Ms. Griffin and the ODA's Chief Investigator, Dan Inderbitzen, conducted an administrative investigation into allegations of Maner's inappropriate | Ex. H: Shipley Decl., at ¶¶44, 45; <br><br> Ex. 45: Memorandum from Inderbitzen, dated May 6, 2013 ("05/06/13 Memo."). |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| conduct at Juvenile Court. | |
| 80.    ADA Shipley initiated the administrative investigation due to allegations of Maner's misconduct in Juvenile Court, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. H: Shipley Decl., at ¶¶44, 70, 71. |
| 81.    Mr. Inderbitzen's 2013 investigatory findings were: (1) in December 2012, Maner was untruthful about who was a fault for a calendaring issue and made false statements during an administrative interview; (2) in December 2012, Maner blocked another attorney's path and threatened his arrest without reason to do so; (3) Maner was frequently late to court; (4) in February 2013, Maner made disparaging comments about a judge in her own courtroom and to her own staff; and (5) Maner said, "look what the cat dragged in" when a clerk entered a courtroom. | Ex. H: Shipley Decl., at ¶46; Ex. 45: 05/06/13 Memo. |
| 82.    Due to the volume and severity of the complaints made against Maner in 2012 and 2013, ADA Shipley reviewed the investigatory findings and decided serious discipline was warranted. | Ex. H: Shipley Decl., at ¶47. |
| 83.    In preparation for issuing a disciplinary recommendation, ADA Shipley reviewed the 2012 and 2013 investigatory findings, Maner's personnel history, various performance-related documents and emails, and consulted with the County Counsel's Office.  Based on all the information before her, ADA Shipley decided that Maner's misconduct, taken together with his performance and | Ex. H: Shipley Decl., at ¶48; Ex. 6: 12/17/12 Memo; Ex. 45: 05/06/13 Memo; Ex. 46: Notice of Intended Discharge, dated June 14, 2013. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| **UNDISPUTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| disciplinary history, warranted termination/discharge. | |
| 84.    On June 14, 2013, ADA Shipley caused to be issued a six-page Notice of Intended Discharge to Maner.  The Notice included: (1) a description of the basis for the proposed discharge; (2) all documents upon which the decision to discharge was based; and (3) written notice that Maner had the opportunity to respond to the recommended discipline prior to its imposition. | Ex. H: Shipley Decl., at ¶¶48, 49;

Ex. 46: Notice of Intended Discharge, dated June 14, 2013;

Ex. 47: Unsigned Order for Discharge. |
| 85.    ADA Shipley based her decision to propose Maner's discharge on his misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. H: Shipley Decl., at ¶¶48, 70, 71. |
| 86.    On June 28, 2013, a pre-disciplinary *Skelly* conference took place regarding the proposed discharge.  DA Fladager was the *Skelly* officer.  Maner and three union representatives attended the conference. Both Maner and his representative, Michael Eggener, responded to the charges and evidence set forth in the Notice of Intended Discharge. | Ex. G: Fladager Decl., at ¶¶35, 36. |
| 87.    During the June 28, 2013, *Skelly* conference, Maner stated his belief that DA Fladager was biased against him because she ran for DA against Michael Cummins in 2006.  He also mentioned that he had done work for Michael Cummins in 2006. | Ex. G: Fladager Decl., at ¶36. |
| 88.    Prior to the June 28, 2013, *Skelly* conference, Maner had never complained | Ex. A: Harris Decl., at ¶¶30-31; |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| to DA Fladager, Chief DDA Harris, ADA Shipley, anyone in HR, or anyone in the Chief Executive Office, about retaliation for his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification. Nor had he mentioned his work for Michael Cummins in 2006. | Ex. C: Griffin Decl, at ¶13; <br><br> Ex. G: Fladager Decl., at ¶39; <br><br> Ex. H: Shipley Decl., at ¶72; <br><br> Ex. 75: Maner Depo 87:2-87:5. |
| 89.     After the June 28, 2013, *Skelly* conference, DA Fladager ordered Chief Investigator Inderbitzen to perform supplemental investigation into the allegations against Maner related to Ms. Ybarra's complaints. Specifically, DA Fladager wanted him to gather additional information pertaining to the complaints Ms. Ybarra made to DA Fladager at a victim's rights event in April 2012. DA Fladager also decided to drop one of the charges against Maner. | Ex. G: Fladager Decl., at ¶¶37, 38; <br><br> Ex. 30: Memorandum from Dan Inderbitzen, dated July 15, 2013 ("7/15/13 Memo"). |
| 90.     DA Fladager initiated the supplemental investigation due to Maner's misconduct and the desire to have a complete investigation, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. G: Fladager Decl., at ¶¶37-38, 45-46. |
| 91.     Chief Investigator Inderbitzen performed the supplemental investigation in July 2013 and summarized his findings in a memorandum to DA Fladager dated July 15, 2013. | Ex. G: Fladager Decl., at ¶38; <br><br> Ex. 30: 7/15/13 Memo. |
| 92.     After the conclusion of the supplemental investigation, DA Fladager reviewed all the attachments to ADA Shipley's Notice of Intended Discharge, as | Ex. G: Fladager Decl., at ¶40; <br><br> Ex. 6: 12/17/12 Memo; |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| well as the supplemental investigation, in preparation for issuing an amended disciplinary recommendation. Based on all the information before her, DA Fladager, in her capacity as a *Skelly* Officer, decided that Maner's misconduct, taken together with his performance and disciplinary history, still warranted discharge as originally proposed by ADA Shipley. | Ex. 30: 7/15/13 Memo; Ex. 31: Amended Notice of Intended Discharge, dated July 19, 2013 ("07/19/13 Notice"). Ex. 45: 05/06/13 Memo; Ex. 46: Notice of Intended Discharge, dated June 14, 2013. Ex. 47: Unsigned Order for Discharge |
| 93.     On July 19, 2013, Skelly Officer DA Fladager caused to be issued an Amended Notice of Intended Discharge to Maner. The Notice included: (1) a description of the basis for the proposed discharge; (2) all documents upon which the decision to discharge was based; and (3) written notice that Maner had the opportunity to respond to the recommended discipline prior to its imposition. | Ex. G: Fladager Decl., at ¶40; Ex. 31: 07/19/13 Notice. |
| 94.     DA Fladager based her decision to continue to propose Maner's discharge per ADA Shipley on his misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. G: Fladager Decl., at ¶¶40, 45, 46. |
| 95.     Because DA Fladager was a witness in Mr. Inderbitzen's July 2013 investigation, because of Maner's claim of bias, and because she had caused to be issued the Amended Notice of Intended Discharge, DA Fladager asked Sheriff Christianson to serve as the *Skelly* officer at Maner's upcoming *Skelly* conference. DA Fladager did not ask Sheriff Christianson to serve as the *Skelly* officer due to Maner's 2006 support for DA- | Ex. G: Fladager Decl., at ¶¶39, 45, 46. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | |
| 96.      After causing the Amended Notice of Intent to Discharge Maner to be issued, DA Fladager had no further role or say in the disciplinary proceeding against Maner. | Ex. E: Declaration of Adam Christianson ("Christianson Decl."), at ¶13; Ex. G: Fladager Decl., at ¶¶40, 41. |
| 97.      On August 5, 2013, a pre-disciplinary *Skelly* conference took place regarding the proposed discharge.  Sheriff Christianson served as the *Skelly* officer. Maner and two of his union representatives attended.  Both Maner and his union representative, Michael Eggener, had an opportunity to respond to the findings and proposed discipline in the Amended Notice of Intended Discharge dated July 19, 2013. | Ex. E: Christianson Decl., at ¶7. |
| 98.      After the August 5, 2013, *Skelly* conference, Sheriff Christianson, reviewed all the evidence before him, including the investigatory findings, the Amended Notice of Intended Discharge, Maner's performance and disciplinary history, and the response provided by Maner and Mr. Eggener in the *Skelly* conference, prior to making his decision as to whether the proposed termination should be upheld. | Ex. E: Christianson Decl., at ¶8. |
| 99.      Based on the evidence before him, Sheriff Christianson decided a 30-day suspension, behavioral counseling, a written reprimand, and a performance improvement plan was warranted – not termination/discharge. Specifically, Sheriff Christianson believed a 30-day suspension was warranted because he concluded that Maner had disobeyed his supervisor's directive, that he was unprofessional in | Ex. E: Christianson Decl., at ¶¶8-11; Ex. 22: Memorandum from Adam Christianson, dated August 18, 2013; Ex. 23: Letter and Order of Suspension, dated August 23, 2013 ("08/23/13 Letter"). |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| court, that he treated a judge with disrespect, that he made inexcusable, disparaging comments to members of law enforcement, made an unprofessional comment to a court clerk, and was defiant, insolent, and showed little remorse. Sheriff Christianson issued the Order for Suspension on August 23, 2013. | |
| 100. Sheriff Christianson based his decision to suspend Maner on Maner's misconduct, not his 2006 support for DA candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. E: Christianson Decl., at ¶¶8, 11-12. |
| 101. In early August 2013, prior to Sheriff Christianson's disciplinary decision, and after Maner was reinstated, the Chief DDAs and ADA Shipley decided to rotate Maner back to an assignment in Department 6 due to his status as a senior DDA V. | Ex. H: Shipley Decl., at ¶52. |
| 102. Rotating Maner to Department 6 had no effect on his salary or benefits. | Ex. H: Shipley Decl., at ¶52. |
| 103. Rotation to the Department 6 assignment included moving offices out of the Juvenile Court and into the Courthouse. | Ex. H: Shipley Decl., at ¶52. |
| 104. The Chief DDAs and ADA Shipley decided to rotate Maner to Department 6 due to Maner's work experience and staffing needs, not his 2006 support for Candidate Cummins, his political speech, his association with any political candidate or other protected classification, or | Ex. H: Shipley Decl., at ¶¶52, 70, 71. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| retaliation. | |
| 105. Sheriff Christianson's August 23, 2013, Order for Suspension notified Maner that he could appeal the thirty-day suspension to the Chief Executive Officer of Stanislaus County. | Ex. 23: 08/23/13 Letter. |
| 106. In or about September 2013, the Chief DDAs and ADA Shipley decided to transfer Maner into a Collateral Support Assignment. | Ex. A: Harris Decl., at ¶¶20, 21; Ex. H: Shipley Decl., at ¶58. |
| 107. The Collateral Support Assignment involved Chief DDA-level responsibilities and could only be performed by a DDA V or a Chief DDA. The original candidate was Chief DDA Doug Fontan, who retired and could not work the position. | Ex. A: Harris Decl., at ¶¶21, 23; Ex. H: Shipley Decl., at ¶¶57, 58; Ex. 7: Collateral Support Assignment. |
| 108. The Chief DDAs, DA Fladager, and ADA Shipley decided to rotate Maner into the Collateral Support Assignment due to his years of experience at the ODA and because they believed he would receive fewer complaints in the assignment, not because of his 2006 support for Candidate Cummins, his political speech, his association with any political candidate or other protected classification, or retaliation. | Ex. A: Harris Decl., at ¶¶24-25, 30; Ex. H: Shipley Decl., at ¶58, 71. |
| 109. Rotation to the CSA would have had no effect on Maner's salary or benefits. | Ex. C: Griffin Decl., at ¶11. |
| 110. On September 26, 2013, Maner voluntarily dropped his appeal of his thirty-day suspension. | Ex. H: Shipley Decl., at ¶56; Ex. 50: Letter from Nelson, dated September 26, 2013. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| 111. Maner opened up his own private law firm on October 8, 2013. | Ex. 75: Maner Depo., at 54:21-25. |
| 112. After Maner's resignation, retired Chief DDAs Goold and Begen eventually returned to the ODA to perform the functions of the Collateral Support Assignment. | Ex. H: Shipley Decl., at ¶59. |
| 113. Maner was disciplined for inappropriate conduct toward staff and the public before and after the 2006 campaign for DA. | Ex. I: Begen Decl., at ¶43; Ex. 13: 04/06/2004 Letter; Ex. 23: 08/23/2013 Letter; Ex. 25: 08/11/2008 Letter; Ex. 26: Letter of Reprimand, dated March 2, 2009; Ex. 28: 12/26/2012 Letter; Ex. 31: 07/19/2013 Notice; Ex. 42: 12/15/2005 Memo; Ex. 46: 06/14/2013 Notice; Ex. 47: Order; Ex. 59: Investigation Summary; Ex. 60: 07/26/2011 Notice; Ex. 68: 04/14/2011 Email chain; Ex. 69: 09/29/11 Memo; Ex. 70: 6/16/11 Memo; Ex. 71: Letter of Reprimand, dated October 11, 2011. |

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 114.   ODA management knew that DDA Wallace McKenzie and DDA Michael Houston supported DA candidate Cummins in 2006. | Ex. 76: Begen Depo., at 178:10-19; Ex. 77: Deposition of Wallace McKenzie ("McKenzie Depo."), at 90:25-91:16 |
| 115.   DDA McKenzie was not terminated or disciplined after supporting DA candidate Cummins in 2006. | Ex. G: Fladager Decl., at ¶ 48; Ex. 77: McKenzie Depo., at 96:9-12. |
| 116.   DDA Houston was not terminated or disciplined after supporting DA candidate Cummins in 2006. | Ex. G: Fladager Decl., at ¶ 47. |
| 117.   County policy explicitly permits employees to express political opinions, participate in political activities, contribute to political campaigns, and write letters or articles regarding political endorsements. | Ex. 16: Stanislaus County Personnel Manual ("Personnel Manual"). |
| 118.   County Code Chapter 3.04.350 forbids taking employment actions on the basis of political affiliation. | Ex. 78: Stanislaus County Code, ("County Code"), Chapter 3.04. |
| 119.   The ODA recognizes ODA employees' right to support or oppose political candidates of their choice. | Ex. 34: ODA Personnel Policies, Sec. 1300. |
| 120.   The County Executive Officer has authority over the County personnel department. | Ex. 78: County Code, Chapter 2.08.050(C)(4). |
| 121.   County Code Chapter 3.28 specifies that the final decision-making authority with respect to personnel matters is a Hearing Board appointed by the Board of Supervisors. | Ex. H: Shipley Decl., at ¶16. Ex. 80: County Code, Chapter 3.28. Ex. 16: Personnel Manual. |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 122. Maner's negotiated labor agreement provided for a grievance procedure through which Maner would have had to submit his appeal of a personnel decision to binding arbitration. The arbitrator would have final-decision making authority. | Ex. 35: Memorandum of Understanding |
| 123. On October 8, 2013, the ODA HR Manager, Cari Griffin, asked Maner to contact her regarding his resignation letter's complaint of a hostile work environment at the ODA. Maner never responded. | Ex. C: Griffin Decl., at ¶19. |
| 124. Maner filed his complaint on April 10, 2014. | Ex. 73: Complaint. |
| 125. At the ODA, disciplinary and personnel decisions pertaining to DDAs are the responsibility of the Assistant District Attorney ("ADA") and the Chief DDAs, who supervise each DDA. | Ex. A: Harris Decl., at ¶19; Ex. G: Fladager Decl, at ¶¶3, 6; Ex. H: Shipley Decl., at ¶¶9-10, 13; Ex. 34: ODA Personnel Policies. |

Dated: February 24, 2016

Respectfully submitted,

LIEBERT CASSIDY WHITMORE

By: */s/ Morin I. Jacob*
Morin I. Jacob
Lisa S. Charbonneau
Attorneys for Defendants
COUNTY OF STANISLAUS, BIRGIT
FLADAGER

Liebert Cassidy Whitmore
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105